**In the Interest of S.R.O., F.M.O., M.S.O., H.M.O., and Z.A.O., Children.**

No. 10–01–00184–CV.

Court of Appeals of Texas, Waco.

July 7, 2004.

Kimberly Pack Wilson, The Allen Firm, Stephenville, for Gary P. Olson.

Michael S. Griffin, Cleburne, for Priscilla D. Garza.

Terri G. Wilson, MacLean & Boulware, Cleburne, Attorney Ad Litem for S.R.O., F.M.O., M.S.O., H.M.O., Z.A.O.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Priscilla Garza and Gary Olson filed competing motions to modify the custody provisions of their divorce decree and com-

peting motions to enforce various provisions of the decree. The court granted Garza's motion to modify in part, wholly denied Olson's motion to modify, and granted each party's motion to enforce in part. Olson presents four issues in which he contends that the trial court erred by: (1) failing to make and file findings of fact and conclusions of law; (2) granting Garza's motion to modify; (3) failing to render judgment in his favor for fifty percent of the children's health care expenses not reimbursed by insurance and incurred while Olson had a temporary health insurance policy in effect; and (4) failing to hold Garza in contempt for allowing the children to remain unsupervised overnight with her extended family.

In response to Olson's first issue, we abated the appeal to the trial court for entry of findings of fact and conclusions of law. *See In re S.R.O.*, No. 10-01-00184-CV (Tex.App.-Waco May 28, 2003, order) (not designated for publication). The trial court has made those findings and conclusions. Olson now presents a supplemental issue challenging the adequacy of the court's findings of fact.

## BACKGROUND

Garza and Olson entered a mediated settlement agreement to resolve their divorce. Pursuant to their agreement, the December 1998 divorce decree provided in pertinent part that:

- they would be joint managing conservators of the children;
- Olson's possession of the children on the first, third and fifth weekends of the month would extend from Friday afternoon to Tuesday morning;
- Olson would have possession of the children every Sunday except Mother's Day from noon until 7:00 p.m.; and

- Olson would obtain health insurance for the children.

Garza filed her motion to modify the decree in July 1999. She asked that she be appointed sole managing conservator and that Olson's weekend possessory rights be modified in accordance with the standard possession order because of changed circumstances and because the provisions of the decree had become unworkable and inappropriate.

Olson filed a counter-motion to modify. He alleged that he should be appointed sole managing conservator because the children's living environment posed a danger to their physical and emotional health, because of changed circumstances, and because the joint managing conservatorship had proved unworkable and inappropriate. Olson specifically alleged that the children's environment posed a danger because, among other allegations:

- Garza had failed to seek counseling as required by the decree; and
- her husband Raul had endangered the children with a "folk remedy."

Olson asked the court to restrict Garza's possessory rights for the same reasons.

Olson alleged in his motion to enforce that Garza had violated the terms of the divorce decree by:

- leaving the children alone with her maternal extended family;
- failing to obtain counseling for herself;
- failing to pay fifty percent of the children's medical expenses; and
- enrolling the children in a new school district without his consent.

He asked for a judgment for arrearages for her portion of the unreimbursed health care expenses.

Garza responded with her own motion to enforce the decree, in which she alleged that Olson had violated the terms of the

decree by failing to provide health insurance for the children and by failing to return the children to the designated adult "in a responsible manner."

At the hearing, Garza testified that her remarriage constituted a material and substantial change of circumstances which would warrant her appointment as sole managing conservator and a change in the provisions of the decree regarding possession of the children. She explained that the decree has proved unworkable because Olson and she had been unable to agree about the children's education and medical care. She stated that a modification of the decree would be a positive improvement for the children and in their best interest because it would allow them to more fully develop their relationship with Raul and herself as a family, it would allow them to have more meaningful weekend-long activities together, and it would allow her to make decisions more effectively and efficiently for the children regarding their education and medical care.

Garza disputed many of Olson's allegations. She testified that she has been diagnosed with dissociative identify disorder, also referred to as multiple personality disorder ("DID"). She began seeing a counselor who holds herself out as one who works with DID patients in January 1999. According to Garza, her counselor has fifteen years' experience working with DID patients.

A particularly contentious issue appears to have been the "folk remedy" which Raul used for earaches. Garza explained that Raul would roll a newspaper into a cone and insert it into the affected ear. He then lit the end of the newspaper. Garza testified that the smoke and heat drew "the air and the pressure up out of the ear relieving the pain." She stated that Raul or she would remove the cone as the fire burned down and put it out. No one was

ever burned. Garza testified that they did this to three of the children and to herself. She said that it relieved her symptoms.

Garza explained that she had failed to reimburse Olson for her share of the children's medical expenses because he had not provided her copies of the receipts. She conceded however that they had agreed that he could provide only monthly summaries of the pertinent expenses.

Raul explained that he learned the folk remedy from his mother who used it for his brothers and sisters and himself as children. No one has ever been hurt by the treatment. He stated that it would be in the best interest of the children for them to have full weekends so they could grow closer as a family.

Olson testified that Garza's counselor does not specialize in the treatment of persons with DID. He identified a psychologist who does specialize in DID. He stated that Garza and he had agreed that he could provide her monthly summaries of the children's medical bills rather than the actual receipts. She has not reimbursed him for her share of any of these expenses.

Olson explained that primary custody by Garza poses a danger to the children because: the folk remedy is dangerous; the children are usually ill when they visit; Garza had failed to appropriately dispense medications to the children; the Garzas use inappropriate discipline; and the children have suffered various injuries while in the Garzas' care. Olson testified that the children fear Raul because he does not allow them to speak to Olson at church and in other settings.

Olson testified that he obtained a short-term health insurance policy for the children after the divorce which was in effect from December 14, 1998 until April 13, 1999. The children were without insur-

ance for three months until he secured permanent insurance in July 1999.

At the conclusion of the hearing, the court denied each party's request to be appointed sole managing conservator but gave Garza sole authority to decide which school the children would attend and to make non-emergency medical decisions on behalf of the children. The court also granted Garza's request to modify the provisions of the decree regarding possession and access to comport with the standard possession order. The court wholly denied Olson's motion to modify.

Regarding enforcement issues, the court found that Garza had violated the decree by failing to consult with Olson before enrolling the children in the new school and by failing to pay fifty percent of the children's unreimbursed health care expenses incurred after Olson obtain permanent health insurance in July 1999. The court found that Olson had violated the decree by failing to obtain appropriate health insurance for the children until July 1999.

## ADEQUACY OF FINDINGS

In response to this Court's abatement order, the trial court made findings of fact and conclusions of law. Thus, we do not further address Olson's first issue challenging the court's failure to do so. Olson contends in a supplemental issue that the findings do not support the judgment and are otherwise inadequate because:

- findings nos. 8, 15, and 17 are conflicting because the latter two find a material and substantial change of circumstances while finding no. 8 does not;
- the findings fail to state specific facts to support the court's finding no. 15 that there has been a material and substantial change of circumstances;
- the findings fail to state specific facts to support the court's finding no. 14

that the parties' prior agreed possession order had become unworkable or inappropriate; and

- the court failed to find that a modification of the terms of the conservatorship order would be a positive improvement for the children.

## CONFLICTS

■ An appellate court must attempt to reconcile conflicts in findings of fact. *Adams v. H & H Meat Prods., Inc.,* 41 S.W.3d 762, 770 (Tex.App.-Corpus Christi 2001, no pet.); *Grossnickle v. Grossnickle,* 935 S.W.2d 830, 841 (Tex.App.-Texarkana 1996, writ denied). In the three allegedly conflicting findings, the court found:

8. that there has been no material and substantial change in the circumstances of the children or one or both of the Joint Managing Conservators since the rendition of the divorce sufficient to justify a change of the *custody* of the children or to change the right of Garza to establish the primary residence of the children;

15. that the circumstances of the children or a person affected by the Final Decree of Divorce have materially and substantially changed since the rendition of the divorce sufficient to justify the modification of *possession* of the children by Olson;

17. that Olson and Garza have been unable to cooperate in the best interest of the children and that there has been a substantial and material change in the circumstances of the children on [sic] one or both of the Joint Managing Conservators since the rendition of the divorce sufficient to justify a modification of *certain rights* of both

Joint Managing Conservators and the right to possession and access of the children by Olson.

A court has broad discretion in making custody determinations. *In re R.D.Y.,* 51 S.W.3d 314, 317 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Warchol v. Warchol,* 853 S.W.2d 165, 167 (Tex.App.-Beaumont 1993, no pet.). Bearing in mind the broad discretion accorded trial courts in these matters, we construe these three challenged findings to reflect the court's determination that, although there was a material and substantial change of circumstances sufficient to warrant a modification of the prior decree, this change did not warrant modifying the decree to designate either parent as the children's sole managing conservator.

## SPECIFICITY

A court must make findings of fact and conclusions of law "on the ultimate or controlling issues but not on evidentiary issues." *Limbaugh v. Limbaugh,* 71 S.W.3d 1, 6 (Tex.App.-Waco 2002, no pet.); *accord Lifshutz v. Lifshutz,* 61 S.W.3d 511, 515 (Tex. App.-San Antonio 2001, pet. denied); *Grossnickle,* 935 S.W.2d at 838. A court need not make findings of fact on undisputed matters. *Limbaugh,* 71 S.W.3d at 5; *Intl. Ins. Agency, Inc. v. R.R. Commn.,* 893 S.W.2d 204, 211 (Tex.App.-Austin 1995, writ denied).

A trial court's refusal to make findings of fact does not require reversal if "the record before the appellate court affirmatively shows that the complaining party suffered no injury." *Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex.1996) (quoting *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989)); *Beard v. Beard,* 49 S.W.3d 40, 52 (Tex.App.-Waco 2001, pet. denied). An appellant has suffered injury from such refusal when the circumstances of the case require him to guess the reason or reasons the court ruled against him. *Beard,* 49 S.W.3d at 52; *Chandler v. Chandler,* 991 S.W.2d 367, 389 (Tex.App.-El Paso 1999, pet. denied); *see also* TEX.R.APP. P. 44.1(a)(2) (error requires reversal if it "probably prevented the appellant from properly presenting the case to the court of appeals").

We have recognized the following principles regarding findings of fact:

- findings of fact are required when "material" factual disputes exist; and

- factual disputes are "material" when they impact ultimate or controlling issues, which are those issues that have a direct effect on the judgment.

*Limbaugh,* 71 S.W.3d at 7.

According to the pleadings, the evidence and the pertinent statutes, the ultimate or controlling issues regarding the requested modification of the conservatorship order are:

(1) (A) whether living in the Garza household endangered the children's physical well-being or significantly impaired their emotional development;

(B) whether there was a material change of circumstances; or

(C) whether the joint managing conservatorship had become unworkable or inappropriate; and

(2) whether a modification of the terms of the joint managing conservatorship would be a positive improvement for the children and in their best interest.

*See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 48, 1995 Tex. Gen. Laws 3888, 3906 (amended 2001); Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.202, 1995 Tex. Gen. Laws 113, 174 (amended 2001) (current version at TEX. FAM.CODE. ANN. § 156.101 (Vernon Supp.2004)).

The ultimate or controlling issues regarding the requested modification of the possession order are:

(1) whether there has been a material change of circumstances; or

(2) whether the possession order has become unworkable or inappropriate.

*See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.301, 1995 Tex. Gen. Laws 113, 174–75 (amended 1999) (current version at Tex. Fam.Code. Ann. § 156.101).

The record reflects the following factual disputes[1] material to these controlling issues:

● whether Garza's counselor specialized in the treatment of DID;

● whether Raul's folk remedy endangered the children; and

● whether the Garzas administered appropriate discipline to the children.

These disputes all concern the issues of whether living in the Garzas' home posed a danger to the children and whether modification would be a positive improvement for the children and in their best interest.

The record contains few disputed fact issues and the controlling issues in this modification proceeding are not complex. Even assuming that the court committed error by refusing to make more specific findings of fact, the circumstances of the case do not indicate that Olson must guess the rationale for the court's rulings. *See Beard,* 49 S.W.3d at 52. Stated another way, the court's failure to make more specific findings of fact has not prevented Olson from presenting his case to this Court. Tex.R.App. P. 44.1(a)(2).

OMITTED FINDING

■ Olson contends that the findings do not support the judgment because the court failed to make a finding that a modification of the terms of the joint managing conservatorship would be a positive improvement for the children.

■ "[W]hen one or more elements [of a ground for recovery] have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." Tex.R. Civ. P. 299. Thus, if an appellee fails to notify the trial court that a finding on a particular element has been omitted and fails to request a finding on the omitted element, an appellate court will presume that the trial court made a finding on the omitted element in a manner which supports its judgment, if such a presumed finding is supported by the evidence. *See Vickery v. Commn. for Lawyer Disc.,* 5 S.W.3d 241, 253–54 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Williams v. Dodson,* 976 S.W.2d 861, 864–65 (Tex.App.-Austin 1998, no pet.).

Olson made a general request for findings of fact and conclusions of law at the conclusion of the trial. After reviewing the court's findings, Olson requested additional findings of fact. However, Olson's request for additional findings does not include a request for a finding on the issue of whether modification of the conservatorship order would be a positive improvement for the children.

The court made all other findings necessary to support a modification of the con-

1. Conversely, there are several undisputed facts presented. Garza does not dispute that she left the children in charge of her eleven-year-old daughter for brief periods of time and once in the charge of her sixteen-year-old son. The Garzas both testified that they instructed the children to not speak to Olson in church, although they gave different reasons for doing so. Garza and Olson both testified that they were unable to agree about educational and medical decisions for the children. Olson testified without contradiction that he smokes in the presence of the children, contrary to a physician's advice.

servatorship order. The Garzas testified that the requested modification would be a positive improvement for the children. Thus, the record contains evidence supporting a finding that the modification would be a positive improvement for the children. Accordingly, we presume that the court made such a finding. *Id.*

We overrule Olson's supplemental issue.

## MODIFICATION OF DECREE

 Olson contends in his second issue that the court abused its discretion by granting Garza's request to modify the decree because she presented no evidence of a material change of circumstances or that the decree had proved unworkable or inappropriate.

To obtain a modification of the terms and conditions of the joint managing conservatorship, Garza had to establish that:

- "the circumstances of the child or of one or both of the joint managing conservators ha[d] materially and substantially changed since the rendition of the [prior] order;" or

- "the [prior] order had become unworkable or inappropriate under existing circumstances."

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.202(1), 1995 Tex. Gen. Laws 113, 174 (amended 2001).[2]

To obtain a modification of the terms and conditions of possession or access to the children, Garza had to establish that:

- "the circumstances of the child or a person affected by the order ha[d] materially and substantially changed

since the date of the rendition of the [prior] order;" or

- "the [prior] order had become unworkable or inappropriate under existing circumstances."

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.301(1), (2), 1995 Tex. Gen. Laws 113, 174–75 (amended 1999) (current version at TEX. FAM.CODE ANN. § 156.101(1)).

This Court has held that the remarriage of a parent can constitute a material change in circumstances. *In re C.Q.T.M.*, 25 S.W.3d 730, 735 (Tex.App.-Waco 2000, pet. denied) (citing *Barron v. Bastow*, 601 S.W.2d 213, 214–15 (Tex.Civ.App.-Austin 1980, writ dism'd); *Wallace v. Fitch*, 533 S.W.2d 164, 167 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ)) (other citations omitted). Olson cites two cases for the proposition that "remarriage is not a material and substantial change in circumstances." *Files v. Thomasson*, 578 S.W.2d 883, 884–85 (Tex.Civ.App.-Houston [14th Dist.] 1979, no writ); *Campbell v. Campbell*, 477 S.W.2d 376, 378 (Tex.Civ.App.-Amarillo 1972, no writ).

Although we did not acknowledge it in *C.Q.T.M.*, Texas courts are divided on this issue. Some hold that remarriage can qualify as a material change in circumstances. *E.g., C.Q.T.M.*, 25 S.W.3d at 735; *Wallace*, 533 S.W.2d at 167; *Kimbrell v. Donnell*, 672 S.W.2d 307, 309 (Tex.App.-San Antonio 1984, no writ). Others have reached the opposite conclusion. *E.g., In re P.M.B.*, 2 S.W.3d 618, 622 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Campbell*, 477 S.W.2d at 378; *Fontaine v. Fon-*

---

2. The statute also required a finding that modification would be a positive improvement for the children and in their best interest. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.202(2), 1995 Tex. Gen. Laws 113, 174 (amended 2001). Because Olson

does not contend that Garza presented no evidence or factually insufficient evidence to support a finding of positive improvement/best interest, we do not further address this requirement.

*taine,* 325 S.W.2d 428, 431 (Tex.Civ.App.-Dallas 1959, no writ).

We believe that the position we espoused in *C.Q.T.M.* is correct because the contrary decisions either do not account for substantial amendments to the statutes governing modification of custody orders or predate those amendments.

According to our research, the first statute governing modification of child custody orders was section 1 of the former article 4639a, which provided that the court "shall have power and authority to alter or change such judgments, or suspend the same, as the facts and circumstances and justice may require." Act of Mar. 19, 1935, 44th Leg., R.S., ch. 39, § 1, 1935 Tex. Gen. Laws 111, 112, repealed by Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 3, 1973 Tex. Gen. Laws 1411, 1458.

Courts applying the 1935 statute and the current laws concur that a custody order "is res judicata of the best interests of a minor child as to conditions then existing." *Knowles v. Grimes,* 437 S.W.2d 816, 817 (Tex.1969); *accord Goldsmith v. Salkey,* 131 Tex. 139, 145, 112 S.W.2d 165, 168 (1938); *C.Q.T.M.,* 25 S.W.3d at 735; *Campbell,* 477 S.W.2d at 378. Thus, courts have long required that a movant establish a material change of circumstances before obtaining a modification of a custody order. *Knowles,* 437 S.W.2d at 817; *Goldsmith,* 131 Tex. at 145, 112 S.W.2d at 168; *C.Q.T.M.,* 25 S.W.3d at 734-35; *Campbell,* 477 S.W.2d at 378.

Under article 4639a, section 1, the rule was sometimes stated that a movant must show "materially changed conditions." *Knowles,* 437 S.W.2d at 817; *Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963); *see also Goldsmith,* 131 Tex. at 145, 112 S.W.2d at 168 (movant must show "material change of conditions"). Other decisions combined the best-interest-of-the-child standard with the requirement of a materi-al change. *E.g., Short v. Short,* 163 Tex. 287, 290-91, 354 S.W.2d 933, 935-36 (1962); *Campbell,* 477 S.W.2d at 378-79; *Fontaine,* 325 S.W.2d at 430-31.

Implicit in these cases was a rule that the changed circumstances of a parent would not suffice to allow modification of a prior custody order. *E.g., Goldsmith,* 131 Tex. at 145, 112 S.W.2d at 168; *Campbell,* 477 S.W.2d at 378-79; *Smith v. Clements,* 424 S.W.2d 326, 327-28 (Tex.Civ.App.-Amarillo 1968, writ ref'd n.r.e.); *Paynter v. Janca,* 331 S.W.2d 814, 816 (Tex.Civ. App.-San Antonio 1960, no writ); *Fontaine,* 325 S.W.2d at 430-31.

The Legislature codified decisional law in 1973 when it enacted Title 2 of the Family Code. Specifically, section 14.08(c) provided that a prior custody decree could be modified only "on a finding that *the circumstances of the child* have materially and substantially changed and that modification is in the best interest of the child." Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.08(c), 1973 Tex. Gen. Laws 1411, 1425 (amended 1975) (emphasis added). Two years later however, the Legislature effectively overruled prior decisional law and expressly allowed the modification of a custody order if the circumstances of a parent or other person affected by the order have materially and substantially changed.

In 1975, the Legislature enacted section 14.08(c)(1) which allowed for modification of a prior conservatorship designation "if the circumstances of the child *or the parent* have ... materially and substantially changed." Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 29, 1975 Tex. Gen. Laws 1253, 1265 (amended 1983) (emphasis added). In addition, the Legislature enacted section 14.08(c)(2) which provided for the modification of a decree governing possession of or access to children or which

determined the respective rights and duties of conservators "if the circumstances of the child *or a person affected by the order* . . . have materially and substantially changed." Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 29, 1975 Tex. Gen. Laws 1253, 1265–66 (amended 1983) (emphasis added).

Between 1975 and the time of the hearing in this case, the Legislature amended the provisions of the statutes regarding whose changed circumstances are relevant on several occasions. However, none of these amendments represents a retreat to the pre–1975 language of the statutes.[3] In 1995, the Legislature repealed the former title 2 of the Family Code governing suits affecting the parent-child relationship and recodified it. The 1995 version of the statutes apply in this case and do not vary materially from the prior versions in terms of whose changed circumstances are relevant.

Under the 1995 version, the court could modify the terms and conditions of the joint managing conservatorship if it found that "the circumstances of the child or of one or both of the joint managing conservators ha[d] . . . materially and substantially changed." Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.202, 1995 Tex. Gen. Laws 113, 174–75 (amended 1999) (current version at TEX. FAM.CODE ANN. § 156.101(1)). Likewise, the court could modify the terms and conditions of possession of and/or access to the children if it found that "the circumstances of the child or a person affected by the order ha[d] materially and substantially changed." Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 156.301, 1995 Tex. Gen. Laws 113, 174–75 (amended 1999) (current version at TEX. FAM.CODE ANN. § 156.101(1)).[4]

■ We must give effect to every word in a statute. *Abrams v. Jones*, 35 S.W.3d 620, 625 (Tex.2000); *Krohn v. Marcus Ca-*

---

**3.** In 1983, the Legislature amended section 14.08(c)(1) to allow for a modification of conservatorship if "the circumstances of the child, *managing conservator, possessory conservator, or other party affected by the order or decree* have materially and substantially changed." Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 9, 1983 Tex. Gen. Laws 2346, 2356 (emphasis added). The 68th Legislature also enacted subsection (c)(3) to govern modification of the terms and conditions for possession of or access to a child. Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 9, 1983 Tex. Gen. Laws 2346, 2357. Subsection (c)(3), like its predecessor subsection (c)(2), allowed for a modification of such terms and conditions "if the circumstances of the child *or a person affected by the order* . . . have materially and substantially changed." *Id.* (emphasis added). In 1987, the Legislature enacted separate statutes governing modification of sole and joint managing conservatorships. Section 14.08 permitted modification of a sole managing conservatorship if "the circumstances of the child, *sole* managing conservator, possessory conservator, or other party affected by the order or decree have material-

ly and substantially changed." Act of May 26, 1987, 70th Leg., R.S., ch. 744, § 8, 1987 Tex. Gen. Laws 2666, 2670 (amended 1989) (emphasis added). Newly enacted section 14.081 permitted modification of a joint managing conservatorship if "the circumstances of the child *or one or both joint managing conservators* have materially and substantially changed." Act of May 26, 1987, 70th Leg., R.S., ch. 744, § 9, 1987 Tex. Gen. Laws 2666, 2671 (amended 1989) (emphasis added). The 1989 amendments did not alter the language quoted regarding changed circumstances. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 371, §§ 6, 7, 1989 Tex. Gen. Laws 1462, 1464–65 (repealed 1995).

**4.** The current statute permits a modification of a prior conservatorship designation, the terms and conditions of the conservatorship, or of the provisions for possession of or access to the child if "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed." TEX. FAM.CODE. ANN. § 156.101(1) (Vernon Supp.2004).

*ble Assoc.*, 43 S.W.3d 577, 580 (Tex.App.-Waco 2001), *aff'd*, 90 S.W.3d 697 (Tex. 2002); *see also* TEX. GOV.CODE. ANN. § 311.021(2) (Vernon 1998) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective"). The Family Code allows for modification of a prior custody order if the circumstances of a parent/conservator have materially and substantially changed. We held in *C.Q.T.M.* and continue to hold that remarriage can constitute a material change of the circumstances of a parent/conservator. 25 S.W.3d at 735.

■■■ Olson does not dispute that Garza has remarried. Remarriage can constitute a material change of the circumstances.[5] *Id.* Thus, Garza presented evidence of changed circumstances sufficient to support a modification of the terms and conditions of the joint managing conservatorship and a modification of the terms and conditions for possession of or access to the children. Because Garza presented evidence of a material change of circumstances, we need not decide whether she presented evidence that the prior decree had become unworkable or inappropriate under the circumstances.

We overrule Olson's second issue.

## JUDGMENT FOR ARREARAGES

■■■ Olson contends in his third issue that the court erred by failing to render judgment in his favor for fifty percent of the unreimbursed children's health care expenses incurred while he had temporary health insurance coverage in effect.

The divorce decree required Olson to maintain health insurance for the children. The decree required each party to pay fifty percent of health care expenses not reimbursed by insurance. Olson offered evidence that Garza had failed to reimburse him for fifty percent of the children's unreimbursed health care expenses incurred from December 1998 through the date of the hearing in March 2000. Olson purchased two 60–day health insurance policies which covered the children from December 14, 1998 through April 13, 1999. He had no insurance for them thereafter until July 1999.

Garza does not dispute that she failed to pay fifty percent of these expenses. She testified that Olson failed to provide her with copies of the bills for the expenses as required by the decree. However, she conceded that they had agreed that he could provide her with written summaries of the expenses, which he did. Garza also refused to pay any portion of the expenses incurred for sessions with a counselor whom she had never agreed to.

The court found that Garza had failed to pay her portion of the children's unreimbursed health care expenses from December 9, 1998 through March 15, 2000. However, the court rendered an arrearages judgment against her for fifty percent of the unreimbursed health care expenses incurred only after the regular policy took effect on July 15, 1999, excluding expenses incurred for the counselor whom Garza had not agreed to.

The provision of the divorce decree that the parties each pay fifty percent of unreimbursed health care expenses constitutes "additional child support." TEX. FAM. CODE ANN. § 154.183(c) (Vernon 2002). In an enforcement proceeding in which judgment is sought for child support arrearages, "the court shall confirm the amount of

---

5. Nevertheless, the fact of remarriage is not sufficient, standing alone, to justify the modification of a prior custody order. The movant must also meet the other statutory requisites necessary to obtain the requested modification, such as establishing that the requested modification would be in the best interest of the child. *See* TEX. FAM.CODE ANN. § 156.101.

arrearages and render one cumulative money judgment." *Id.* § 157.263(a) (Vernon Supp.2004).

 The movant bears the burden of proving the amount of the arrearages in an enforcement hearing. *See Curtis v. Curtis*, 11 S.W.3d 466, 472 (Tex.App.-Tyler 2000, no pet.); *Buzbee v. Buzbee*, 870 S.W.2d 335, 339 (Tex.App.-Waco 1994, no writ). Once the amount of the arrearages is established, the court has an affirmative duty to confirm the arrearages and reduce them to judgment.[6] *See* TEX. FAM.CODE ANN. § 157.263(a); *In re Gonzalez*, 981 S.W.2d 313, 315 (Tex.App.-San Antonio 1998, pet. denied). Or as some courts have said, the trial judge acts "as a mere scrivener" in this situation. *In re M.C.R.*, 55 S.W.3d 104, 109 (Tex.App.-San Antonio 2001, no pet.); *Curtis*, 11 S.W.3d at 471; *Buzbee*, 870 S.W.2d at 340 (all quoting *Williams v. Patton*, 821 S.W.2d 141, 153 (Tex.1991) (Phillips, C.J., dissenting)).

Olson established the amount of health care expenses which were not reimbursed by insurance. The only difference between the unreimbursed heath care expenses incurred from December 14, 1998 through April 13, 1999 and those incurred after July 15, 1999 was the type of insurance policy in effect. The divorce decree ordered Olson to maintain health insurance coverage "through his employment *or other insurance provider.*" (emphasis added) Aside from the period between April 14, 1999 and July 15, 1999, he did so. Accordingly, we conclude that the court erred by failing to include in the judgment for arrearages fifty percent of the unreimbursed health care expenses incurred from December 9, 1998 through April 13, 1999.

Because Olson does not complain of the court's refusal to order reimbursement for the expenses incurred for the counselor whom Garza did not agree to, we will modify the judgment to include fifty percent of the unreimbursed health care expenses incurred between December 9, 1998 and April 13, 1999, excluding expenses incurred for the counselor. According to the record, the total amount of unreimbursed health care expenses for that period is $143.05, excluding the counselor's expenses.

We sustain Olson's third issue.

## CONTEMPT

 Olson contends in his fourth issue that the court erred by failing to hold Garza in contempt for allowing two of the children to spend the night at her brother's home in violation of the decree. This court does not have jurisdiction to review the denial of a contempt motion by direct appeal. *See Norman v. Norman*, 692 S.W.2d 655, 655 (Tex.1985) (per curiam); *In re B.A.C.*, 144 S.W.3d 8, 11, No. 10–02–00243–CV, 2004 WL 691681, at *2, 2004 Tex.App. LEXIS 3018, at *6 (Tex.App.-Waco Mar.31, 2004, no pet. h.); *In re Naylor*, 120 S.W.3d 498, 500 (Tex.App.-Texarkana 2003, orig. proceeding). We dismiss Olson's fourth issue for want of jurisdiction.

## CONCLUSION

We affirm the court's "Order in Suit to Modify Parent–Child Relationship" in its entirety. We modify the arrearages portion of the "Order of Enforcement by Contempt and Suspension of Commitment"

---

6. Although the court has no discretion to reduce the amount of the arrearages, the arrearages may be subject to a counterclaim or offset. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 157.262(b), 1995 Tex. Gen. Laws 113, 184 (amended 2003) (current version at TEX. FAM.CODE ANN. § 157.262(f) (Vernon Supp.2004)). However, Garza did not assert a counterclaim or offset.

rendered with respect to Olson's Second Amended Counter–Petition for Enforcement by adding $71.53 to the total arrearages confirmed in the order and affirm that order as modified.