

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00136-CV
_____


JASON D. BROWNLEE, Appellant

V.

KATHARINE A. DANIEL, Appellee


On Appeal from the County Court
Franklin County, Texas
Trial Court No. 1889


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

MEMORANDUM OPINION

The precipitating event that ended the efforts between Katharine A. Daniel and her former husband, Jason D. Brownlee, to agree on visitation rights regarding their children was a telephone call Katharine said came from Jason at 8:02 a.m., September 2, 2011, during which Jason allegedly told Katharine that he would not be returning their son Isaac and that she would not see Isaac again. That event was immediately followed by the issuance of a protective order by the County Court of Franklin County—a protective order subsequently extended permanently—even though the District Court in neighboring Titus County had granted the divorce and, thus, had "exclusive, continuing jurisdiction." Brownlee's appeal of the protective order presents us a case of first impression requiring us to consider the two competing orders issued by the different courts, the latter eviscerating visitation rights accorded Brownlee in the former.

We affirm the protective order because (1) the Franklin County Court had jurisdiction to issue the protective order, and Jason forfeited his right to complain of venue in that court; (2) using evidence of family violence occurring during the marriage was not an improper collateral attack on the divorce decree; (3) the trial court did not demonstrably misapply the definition of family violence; and (4) the trial court did not abuse its discretion in finding family violence is likely to occur in the future.

*(1)*     *The Franklin County Court Had Jurisdiction to Issue the Protective Order, and Jason Forfeited His Right to Complain of Venue in that Court*

A sketch of the procedural history of this case is in order. Jason and Katharine's final divorce decree was entered April 7, 2011. The decree appoints Katharine and Jason as joint managing conservators of the couple's four children,[1] and sets forth a detailed possession order, per mutual agreement, and in the event of no agreement, per the terms of the decree.[2] Thereafter, Jason filed a motion to enforce the final divorce decree in the District Court of Titus County. On August 29, 2011, the parties entered into a Rule 11 agreement setting out the parties' agreement with respect to Jason's visitation rights. The enforcement motion remains pending in the District Court.

On September 2, 2011—the day of the precipitating telephone call—on Katharine's application, the County Court of Franklin County[3] entered a temporary ex parte protective order finding "a clear and present danger" that Jason will commit acts of family violence that will cause Katharine, the children, and Katharine's new husband, Andrew Daniel, "immediate and irreparable injury, loss and damage. . . ." A final hearing was scheduled for September 22, 2011.

---

[1]The children of the marriage are: (1) Mamie Ryan Brownlee, born September 10, 1999; (2) Emma Grace Brownlee, born August 10, 2001; (3) Elijah Dalton Brownlee, born November 9, 2005; and (4) Isaac Davis Brownlee, born August 24, 2007.

[2]In the absence of agreement, the decree entitles Brownlee to the right of possession on the first, third, and fifth Fridays of each month, weekend possession extended by holidays, Thursdays during the regular school term from 6:00 p.m. and ending at the time the children are to be in school on Fridays, Tuesdays following the second and fourth Fridays during the regular school term, on the same terms as Tuesdays, spring break in even-numbered years, extended summer possession, Christmas holidays in even-numbered years, Thanksgiving holidays in odd-numbered years, and Father's Day weekend.

[3]Katharine testified she lives in Mount Vernon, Texas, which is located in Franklin County. The Texas Family Code provides for venue for a protective order in the county in which the applicant resides or the county in which the respondent resides. TEX. FAM. CODE ANN. § 82.003 (West 2008).

3

The ex parte order was based on Katharine's application and affidavit. In addition to a description of the telephone call, Katharine's affidavit described previous threats or harm by Jason as "13 yrs. of psychological, sexual & physical abuse while married. 5/10/11 Brownlee called several times & verbally abuses. He said he is coming to my apartment. We left until 9 pm to avoid him. He stalked & followed me everywhere I went for last 2 yrs." Admittedly, none of the pre-decree allegations were raised in the divorce proceeding.

A hearing on the protective order was conducted September 16, 2011. Katharine testified that Jason is an angry person and "has been consistently violent as long -- almost as long as I've known him." She also testified that she sought the ex parte protective order because Jason threatened, on September 2, to abscond with the couple's youngest son. During Jason's weekday visitation, he first delivered the three older children to school, and then would take Isaac to daycare at First Steps, where both Katharine and her mother work. Katharine immediately reported Jason's telephone call to the Mount Pleasant Police Department. Shortly thereafter, Katharine's mother called to tell her Jason had dropped off Isaac at daycare around 8:15 that same morning.

After hearing conflicting testimony from Katharine and Jason regarding alleged violence and abuse during the marriage,[4] the trial court issued a protective order for a period of one year. The court found that family violence had occurred and (among other things) ordered Jason to stay away from the children and gave Katharine exclusive possession of the children. The order

---

[4]Katharine testified to one incident of alleged family violence that occurred after the divorce was finalized in which Jason knocked her to the ground with his elbow at a swim meet.

specifically provides that it "supersedes any previous order granting [Jason] possession or access to the Children."[5]

On appeal, Jason urges this Court to declare the permanent protective order invalid because it was issued by a court not having continuing, exclusive jurisdiction over matters involving the Brownlee children. In support of this position, Jason relies on Section 155.001 of the Texas Family Code, which declares, "a court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a final order."[6] TEX. FAM. CODE ANN. § 155.001(a) (West 2008). In reliance on this provision in Title 5,[7] Jason maintains that no other court, including the Franklin County Court, had jurisdiction to render a permanent protective order in connection with the Brownlee children other than the Titus County District Court, which, by statute, is the court of continuing, exclusive jurisdiction. We disagree.

To be sure, Katharine had the right to file the application for protective order in a court other than the District Court of Titus County. Title 4 of the Texas Family Code[8] contemplates the circumstance in which a protective order is issued after a final decree of divorce has been issued:

---

[5]Because the protective order directly contravened the terms of the divorce decree, Jason moved the trial court to vacate same (1) as a collateral attack on the decree, and (2) because there was no evidence to support the finding of family violence after the decree of divorce was entered. The trial court did not rule on the motion to vacate or for a new trial. Jason has been separated from his children since the date the protective order was issued.

[6]Certain exceptions, which do not apply here, are listed in the statute.

[7]TEX. FAM. CODE ANN. §§ 101.001–162.602 (West 2008 & Supp. 2011).

[8]TEX. FAM. CODE ANN. §§ 71.001–91.004 (West 2008 & Supp. 2011).

5

(a) If a final order has been rendered in a suit for dissolution of marriage or suit affecting the parent-child relationship, an application for a protective order by a party to the suit against another party to the suit filed after the date the final order was rendered, and that is:

> (1) filed in the county in which the final order was rendered, shall be filed in the court that rendered the final order; and

> (2) filed in another county, shall be filed in a court having jurisdiction to render a protective order under this subtitle.

(b) A protective order rendered by a court in which an application is filed under Subsection (a)(2) is subject to transfer under Section 85.064.

TEX. FAM. CODE ANN. § 85.063.

Moreover, an application for a protective order on behalf of a child who is subject to the continuing, exclusive jurisdiction of a court under Title 5 may be filed and heard in another court:

> An application that requests a protective order for a child who is subject to the continuing exclusive jurisdiction of a court under Title 5 . . . must include:

> (1) a copy of each court order affecting the conservatorship, support, and possession of or access to the child; or

> (2) a statement that the orders affecting the child are unavailable to the applicant and that a copy of the orders will be filed with the court before the hearing on the application.

TEX. FAM. CODE ANN. § 82.007 (footnote omitted). The court in which the protective order is filed may transfer the protective order action to "the court of continuing, exclusive jurisdiction if the court makes the finding prescribed by Subsection (c)." TEX. FAM. CODE ANN. § 85.064.

"Title 4 plainly contemplates that an application for a protective order may be filed on behalf of a child who is subject to the continuing jurisdiction of a court under Title 5." *In re*

6

*Salgado*, 53 S.W.3d 752, 760 (Tex. App.—El Paso 2001, orig. proceeding). "[T]he Legislature obviously anticipated that a protective order may conflict with a valid pre-existing custody order." *Id*. at 761. The public policy surrounding these provisions is "to allow immediate access to a tribunal for the safety and protection of a child." *Id.* at 762. "While it does not appear that all of the legislative glitches have been resolved satisfactorily, we decline the invitation . . . to impose our own solution by legislating from the bench." *Id.*

Even though it is clear that a court, other than the court of continuing, exclusive jurisdiction, has jurisdiction to enter a protective order involving children subject to a court of continuing, exclusive jurisdiction, there are, as stated in *Salgado*, certain "legislative glitches." In this case, the "glitch" presents itself in the form of conflicting orders regarding Jason's visitation rights to his children.

This Court has recognized this potential problem:

A temporary ex parte protective order prevails over any other court order under Title 5 to the extent of any conflict between the orders. TEX. FAM. CODE ANN. § 83.005 (Vernon 2002),[9] but the statute is silent as to whether the same applies to an order after the hearing. If so, then the conflict is resolved.

*In re Compton*, 117 S.W.3d 548, 551 (Tex. App.—Texarkana 2003, orig. proceeding). While we do not find it necessary to resolve this issue in order to fairly address Jason's appellate points, the problem of conflicting orders, and the priority which they are accorded, must be legislatively

---

[9]Section 83.005 provides:

During the time the order is valid, a temporary ex parte order prevails over any other court order made under Title 5 to the extent of any conflict between the orders.

TEX. FAM. CODE ANN. § 83.005.

7

addressed in order to clarify such matters in the future. Recognizing, however, the county court's jurisdiction to enter the permanent protective order, we must determine whether Jason waived his right—as Katharine contends—to complain of the order.

Katharine concedes the protective order interfered with the continuing, exclusive jurisdiction of the Titus County District Court, but claims the Texas Family Code contemplates such interference, and provides a remedy for it—the request for a transfer of the protective order to the Titus County District Court. Because Jason failed to request a transfer under Section 85.064 of the Texas Family Code, Katharine contends Jason failed to preserve any error on appeal. We disagree.

At the protective order hearing, counsel for Katharine informed the court that the parties were divorced in the Titus County District Court. The court was also informed by Katharine's counsel that Jason "is currently pursuing an enforcement action relative to the decree in the District Court of Titus County." The court understood that "we have two separate courts at play here." Counsel for Jason explained that, on August 29, the parties entered into a Rule 11 agreement,[10] which specified upcoming access Jason was to have to the children. Counsel further explained that a hearing was scheduled for August 30 on the enforcement action, but the hearing had been postponed at Katharine's request. While no specific objection was made, and notably no motion to transfer venue was requested, counsel for Jason indicated that "it's not an issue for this Court because it's in violation of the Rule 11 agreement." The hearing proceeded as scheduled.

---

[10]The Rule 11 agreement is not in the record.

8

During closing arguments, counsel for Jason stated, "with the pending action in district court . . . this matter should be dismissed . . . [to] go forward in the district court." Counsel concluded, "[s]o we would ask the Court to dismiss the temporary protective order and let us proceed to litigate all of this through the district court of Titus County." Without addressing or ruling on this request, the trial court issued the subject protective order.

The statutory scheme contemplates that protective orders are emergent in nature. Accordingly, such orders can and should yield to the decrees of the court of continuing, exclusive jurisdiction, on transfer to such court. Here, however, Jason did not seek to transfer venue back to Titus County.

The transfer provision is not mandatory. A court "may" transfer if the court finds (1) it is in the interest of justice, or (2) for the safety or convenience of a party or a witness. TEX. FAM. CODE ANN. § 85.064(c). The county court may have transferred the case to Titus County on proper motion, in which circumstance the parties would not be faced with the conundrum of conflicting orders regarding Jason's visitation rights. Conversely, the county court may have declined such a transfer request, in which event the parties would be in the same position as they presently find themselves. Yet, having failed to avail himself of the opportunity to request a transfer of this matter to Titus County, Jason cannot now complain that the matter was decided in an improper venue.

*(2)* *Using Evidence of Family Violence Occurring During the Marriage Was Not an Improper Collateral Attack on the Divorce Decree*

Jason next contends the protective order amounts to a collateral attack on the final decree. We disagree.

Katharine's testimony at the protective order hearing centered on alleged abuse she suffered during the parties' thirteen-year marriage.[11] Having admitted she, during the divorce proceeding, made no allegation of abuse, Katharine testified she simply wanted out of the marriage "as easily and quickly as possible."

In determining conservatorship, a court shall consider evidence of "the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit." TEX. FAM. CODE ANN. § 153.004(a). Further, if credible evidence "of a history or pattern of . . . physical or sexual abuse by one parent directed against the other parent, a spouse, or a child" is presented, the court may not appoint joint managing conservators. TEX. FAM. CODE ANN. § 153.004(b).

Katharine testified to various instances of Jason's alleged abusive conduct during the marriage, including an incident in which he hit her with his fists on the arms and chest, knocking her up against a wall, and closing a door on her. These instances caused physical pain. At times, Jason would allegedly force Katharine to have sex against her will, dragging her by her clothes and arms. One evening, according to Katharine, Jason threw her up against the garage door and

---

[11]There was no allegation the children were abused.

hit her with his elbow. Katharine also testified that, when she was eight weeks pregnant with her first child, Jason dragged Katharine down the hall by her panties, during which event she tried to climb out the window, but he pulled her back inside. It is unclear when Katharine says these incidents took place, other than generally during the marriage.

Katharine describes more recent incidents, one occurring in January 2011, when Jason came to pick up the children from taekwondo class. Katharine was loading the children's items for them to stay overnight with Jason when she saw her calendar in his car. When she picked up the calendar, Jason allegedly tackled her from behind, bruising her arms. Katharine called the police, and a report was made. No charges were filed against Jason as a result of this incident. The parties were still married at the time of this alleged occurrence.

In the summer, apparently, of 2011, Jason reportedly came to a swim meet where one of the sons was participating. Katharine and the other children were there as well. Without Katharine's approval, Jason carried Isaac across the pavement outside. As Katharine started to reach for Isaac, Jason allegedly knocked her to the ground with his elbow. Katharine called the police, but no action was taken against Jason.[12] This incident apparently took place after the divorce.

The foregoing evidence (at least to the extent any of these alleged incidents took place within a two-year period preceding the filing of suit or during the pendency of the suit) could be properly considered by the district court in determining conservatorship. *See* TEX. FAM. CODE

---

[12]Jason testified that the officer called to investigate this incident stated that Katharine alleged Jason twisted her arm and put her down on the ground.

11

ANN. § 153.004. Katharine made the decision not to bring this evidence to the attention of the district court.

Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (1996). It requires proof of (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Id.* Once a conservatorship order has been implemented, the order "is res judicata of the best interest of a minor child as to conditions then existing." *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969); *In re S.R.O.*, 143 S.W.3d 237, 245 (Tex. App.—Waco 2004, no pet.). "The concept of res judicata attaches and the [conservatorship] order establishes what was in the best interest of the children at the time of the divorce." *Bates v. Tesar*, 81 S.W.3d 411, 421 (Tex. App.—El Paso 2002, no pet.) (presumption favoring joint managing conservatorship does not apply in modification proceedings). "This concept is recognized by the requirement that a party attempting to modify a prior order entered in a suit affecting the parent-child relationship must establish that there has been a material and substantial change in circumstances since the date of rendition of the prior order." *Id.*

In a traditional modification proceeding, a party must meet the requirements of Section 156.101 of the Texas Family Code. *In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.). This requires a showing that "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since"

12

the date of the rendition of the order. *See* TEX. FAM. CODE ANN. § 156.101(a)(1)(A). Thus, the trial court examines what material changes have occurred since the time of the conservatorship order or decree. *T.W.E.*, 217 S.W.3d at 559–60. "The conviction or an order deferring adjudication" of a joint managing conservator for an offense involving family violence "is a material and substantial change of circumstances sufficient to justify . . . modification of an existing order." TEX. FAM. CODE ANN. § 156.1045(a).

Although Title 4 "plainly contemplates" that an application for protective order may be filed in a court other than one of continuing, exclusive jurisdiction under Title 5, inherent limitations exist. Acknowledging that all issues set forth in the decree regarding conservatorship are res judicata of that issue at the time of the decree, it is axiomatic that a post-decree protective order, issued after conservatorship has been established by a court of continuing, exclusive jurisdiction, must be based on evidence adduced after the decree was entered. *See Knowles*, 437 S.W.2d at 817. This result is logical, given the fact that even the court of continuing, exclusive jurisdiction is not permitted to relitigate matters of conservatorship absent a material and substantial change in circumstances after the rendition of the decree.

Here, the decree, with its conservatorship provisions, is res judicata of what was in the best interests of the children at the time of the divorce. *See Knowles*, 437 S.W.2d at 817; *Bates*, 81 S.W.3d at 421. We do not conclude, however, that the use of pre-decree evidence in the hearing for the protective order amounts to a collateral attack on the decree.

The legitimate and nonbarred issues at play in the protective order proceeding were whether family violence occurred after the final decree was issued and whether such family

13

violence was likely to occur in the future. *See* TEX. FAM. CODE ANN. § 85.001(a).[13] True, the trial court heard evidence of pre-decree family violence, admitted without objection at trial. Such evidence may be used to corroborate evidence of post-decree family violence. *See Colvin v. Colvin*, No. 03-03-00234-CV, 2004 WL 852266, at *5–6 (Tex. App.—Austin Apr. 22, 2004, no pet.) (mem. op.) (evidence of pre-divorce conduct properly admissible in protective order proceeding to corroborate evidence of similar, post-decree conduct); *see also In re C.E.B.*, 604 S.W.2d 436, 443 (Tex. Civ. App.—Amarillo 1980, no writ) (pre-divorce conduct cannot be introduced in modification proceeding except to corroborate evidence of similar post-decree conduct). Because evidence of post-decree family violence was admitted at trial—the incident at the swimming pool—the pre-decree evidence of family violence was properly considered to corroborate this evidence.

---

[13]"At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence occurred; and (2) family violence is likely to occur in the future." TEX. FAM. CODE ANN. § 85.001(a).

*(3)     The Trial Court Did Not Demonstrably Misapply the Definition of Family Violence*

Because a protective order provides injunctive relief, we apply the standard of review that is applied when reviewing injunctions. *In re Epperson*, 213 S.W.3d 541, 542 (Tex. App.—Texarkana 2007, no pet.). Thus, we review for abuse of discretion the trial court's grant of the protective order against Jason. *Id.* at 543 (citing *Operation Rescue–Nat'l v. Planned Parenthood of Houston & S.E. Tex.*, *Inc.*, 975 S.W.2d 546, 560 (Tex. 1998)). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles or reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *Downer v. Aquamarine Operators*, *Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Jason contends the trial court abused its discretion in issuing the protective order because it did not rely on the relevant part of the Texas Family Code's definition of "family violence":

> an act by a member of a family[14] or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself . . . .

TEX. FAM. CODE ANN. § 71.004(1). A trial court shall render a protective order if the court finds that family violence (1) has occurred and (2) is likely to occur in the future. TEX. FAM. CODE ANN. § 81.001.

*The Phone Call*

Jason contends that, because the application for protective order only listed one incident—the precipitating telephone call of September 2—the county court did not base its

---

[14]"Family" includes former spouses, among others. TEX. FAM. CODE ANN. § 71.003.

15

finding of family violence on the statutory definition. There was no allegation of physical violence connected with the telephone call, just Jason's threat to keep Isaac. Moreover, the total time Isaac was with Jason between the telephone call and the time he was delivered to daycare was only approximately ten minutes. Jason further contends there was no allegation that Isaac suffered physical harm or bodily injury or that he was in any way assaulted. At best, the telephone call, Jason contends, is evidence only of harassment, and presents no evidence that would support the imposition of a protective order.

According to Section 82.004 of the Texas Family Code, an application for protective order must contain four pieces of information: (1) the name and county of residence of each applicant; (2) the name, address, and county of residence of the individual alleged to have committed family violence; (3) the relationship between the applicants and the individual alleged to have committed family violence, and (4) a request for a protective order. TEX. FAM. CODE ANN. § 82.004. The applicant is not required to specify facts in support of the protective order. *See Martinez v. Martinez*, 52 S.W.3d 429, 433 (Tex. App.—Fort Worth 2001, pet. denied).

True, Section 82.009 of the Texas Family Code—setting forth the requirements for an application for a temporary ex parte order—requires an affidavit containing a detailed description of the facts surrounding the alleged violence. However, Jason does not complain here of the ex parte order; rather, his complaint focuses on the issuance of the permanent protective order.

16

Given the facts presented, the protective order must have been based on post-decree conduct. Certainly, the telephone call of September 2 is after the decree. However, Katharine makes no argument that the telephone call fits within the definition of "family violence."

*The Swim Meet*

Katharine testified to only one incident of physical contact occurring after the final decree. The swim meet at which this incident was to have occurred happened during the summer of 2011, when Jason allegedly knocked Katharine to the ground, after which she called the police. Jason denied Katharine's account of this incident, claiming instead that he placed his son on the ground and walked away. After Jason returned from a trip to his car to get cell phones for his two daughters, he visited with law enforcement officers regarding Katharine's allegations, but was not arrested or charged with an offense.

The county court had the discretion to determine this incident was an act of family violence as defined in the statute. As trier of fact and judge of the credibility of the witnesses, the county court was free to believe Katharine's testimony and to reject Jason's denial of the occurrence. *See Wilkerson v. Wilkerson*, 321 S.W.3d 110, 116 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd). Further, the court was permitted to consider pre-decree evidence of family violence to corroborate Katharine's account of this post-decree conduct.[15] *See Colvin*, 2004 WL 852266, at *5–6; *see also C.E.B.*, 604 S.W.2d at 443. We may not substitute our judgment for that of the trier of fact, so long as the evidence falls within the zone of reasonable disagreement.

---

[15]Jason did not address this post-decree incident in his brief.

17

*Wilkerson*, 321 S.W.3d at 116. Conflicting evidence, such as we have in this record, is within that zone.

*(4)*      *The Trial Court Did Not Abuse Its Discretion in Finding Family Violence Is Likely to Occur in the Future*

Jason contends the trial court abused its discretion in finding that he is likely to commit family violence in the future, claiming Katharine would not have agreed to the conservatorship provisions of the decree if she believed he was capable of future family violence. Katharine nevertheless testified that Jason is an angry person and "has been consistently violent almost as long as I've known him." She stated that, if a protective order is not granted, there is a reasonable likelihood of family violence in the future. This, however, is a conclusory and self-serving statement.

"Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Epperson*, 213 S.W.3d at 544. In making its decision regarding the likelihood of future family violence, the trial court was not limited to just the incident at the swim meet. It had evidence of the precipitating telephone call, arguably threatening, even though not, in itself, family violence. And, at least as corroboration, it had evidence of pre-decree family violence introduced, without objection. The trial court, therefore, had sufficient evidence to permit a reasoned determination that family violence is likely to occur in the future. We, therefore, conclude the trial court did not abuse its discretion in issuing the permanent protective order.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


CONCURRING OPINION

What are litigants, judges, and lawyers to do when a conflict regarding access to and possession of children develops between the order of a court of continuing jurisdiction and a court issuing a protective order?  It has been noted that the Legislature appeared to recognize that such a conflict may occur.  But there must be some structure for the ultimate disposition of this issue.  When it is possible, the statutes should be construed to avoid conflicting orders by different courts.  I believe the Legislature has authorized some measures which, if used, might avoid conflicting orders and forum shopping.  *See In re Compton*, 117 S.W.3d 548, 551 (Tex. App.—Texarkana, 2003, orig. proceeding).  I offer these comments as suggestions for an orderly disposition of cases in this posture.

The overall management of issues of conservatorship, possession of, and access to children rests with the court with exclusive, continuing jurisdiction of that case.  But an emergency may develop quickly, necessitating court intervention to prevent violence among family members.  For that reason, the Legislature authorized many courts across the state to issue protective orders (and for public attorneys to file for them without cost) when the evidence justified it, without the necessity of returning to the court of continuing jurisdiction.  In such

19

emergency situations, the temporary ex parte order prevails over the district court order of possession and access. TEX. FAM. CODE ANN. § 83.005 (West 2008). But courts issuing protective orders are not restricted to issuing only ex parte emergency orders and are allowed to grant a protective order, possibly restricting all visitation, for a maximum of two years. TEX. FAM. CODE ANN. § 85.025(a)(1) (West Supp. 2011). As in this case, such an order may directly conflict with an existing order from the court of continuing jurisdiction. So what happens for the next twenty-three months, after the emergency is over? Are there no circumstances when the offending party will be allowed to visit his or her child during that entire period?

The first method and most logical step to avoid conflicting orders is for one party to move for a transfer to the court of continuing jurisdiction and for the judge issuing the protective order to grant it "in the interest of justice." TEX. FAM. CODE ANN. § 85.064(b) (West 2008). This could be done immediately after the ex parte order and before the hearing on the protective order—giving the district or family court jurisdiction to determine the ultimate issuance of the protective order or incorporate it in the current court order. In some instances, in Texas, that might not be feasible, but since Franklin County, where the protective order was issued, and Titus County, the county of continuous jurisdiction, are adjoining counties, there seems little reason not to transfer the case and allow the district court to conduct the hearing on the protective order. Here, the permanent (one year) order has already been entered and so far, no one has requested a transfer of the case. Of course, transfer is discretionary and such a motion may not solve the problem.

Section 85.009 states that the protective order is valid until it is "properly superseded by another court with jurisdiction over the order." The statutes authorize the district or family court to issue protective orders and also provide that the divorce court consider evidence of domestic violence; that court may deny or limit a parent access to the child if there is a history of committing family violence in the past two years. TEX. FAM. CODE ANN. § 153.004 (West 2008). In making that determination, the court of continuing jurisdiction "shall consider whether a protective order was rendered under Chapter 85, Title 4, against the parent during the two years preceding the filing of the suit or during the pendency of the suit." These statutes contemplate that the court of continuing jurisdiction may address visitation after another court has entered a protective order. The statute allows the district court to impose safety conditions (supervision, protective exchange, abstinence from alcohol or drugs, complete battering intervention program). TEX. FAM. CODE ANN. § 153.004(d)(2)(A-D). This appears to be one of the ways that the protective order could be superseded as mentioned in Section 85.009.

How does this apply to this case? I believe the interpretation of the statutes is that the protective order is authorized and the county court had jurisdiction to enter it. While it was a temporary ex parte order, it prevailed over any order from the Titus County District Court. Upon entering the final order excluding the father from visitation (contrary to the district court order), it remains in effect unless it is transferred to the court of continuing jurisdiction or until that court, perhaps on a motion to modify the present order, enters another order. The county court in Franklin County has the authority to transfer the case and the order to the district court in Titus County. That would end the conflict; for the sake of judicial economy and consistency, such a

21

transfer should be the normal course. If it is transferred, that district court should revise its current order to recognize the issuance of the protective order and act in accordance with the statutory limitations.

If the transfer is refused, I believe the court of continuing, exclusive jurisdiction may revisit that order and supersede it with one that recognizes the issuance of a protective order and the limitations that imposes. Since the district court order has not been in effect for one year, the question is whether the father is required to show that the complete restriction of visitation significantly impairs the child's emotional development (no doubt the circumstances of the parties have materially and substantially changed since the divorce order). *See* TEX. FAM. CODE ANN. §§ 156.101–.102 (West Supp. 2011) (if one is convicted of family violence, statute specifies such is material and substantial change of circumstances sufficient to justify modification), § 156.1045(a) (West 2008). It certainly appears that a modification to comply with the provisions recognizing that a protective order has been granted and can proceed without the passage of one year from the previous order. Upon hearing the motion to modify, the trial court would necessarily be guided by the requirements to consider the fact that a protective order was granted in determining whether a history of past neglect or abuse precludes the father's visitation with the child. If visitation was allowed, restrictive conditions could be attached. The district court order would incorporate the protective order, with proper restrictions or modifications as allowed by statute, and supersede the county court order.

In this manner, the protective order accomplishes its purpose—to protect family members during an emergency and compel the district court to be aware of and give credence to the

protective order.  This allows the role of the court of continuing jurisdiction to remain intact and importantly assures there will be no incentive to engage in forum shopping.

I concur with the majority opinion.


                                        Jack Carter
                                        Justice


Date Submitted:      June 21, 2012
Date Decided:        July 25, 2012