Opinion issued July 19, 2007

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00446-CV






KRISTY GEORGE, Appellant


V.


JEFF JEPPESON, Appellee






On Appeal from the 310th District Court

Harris County, Texas

Trial Court Cause No. 1997-38411






O P I N I O N

 Appellant, Kristy George (Kristy), challenges a judgment that modified the
conservatorship terms of the 1997 decree that terminated her marriage to appellee,
Jeff Jeppeson (Jeff) by changing his status to sole managing conservator and
changing her status to possessory conservator for their minor female children, Ma. J.
(MA) and Me. J. (ME). Kristy contends that the trial court abused its discretion by
(1) not ordering specific periods of possession to Kristy for both girls, (2) allocating
decisions concerning her access to the girls to a third party, and (3) not rendering
judgment in favor of Kristy for unpaid child support due under an earlier decree. We
affirm. 

Facts and Procedural History


 Kristy and Jeff were divorced in October 1997, having separated three years
earlier. The divorce decree named Kristy and Jeff joint managing conservators for
both girls. That same year, Kristy married David George (David), who is ME's
biological father. (1)

 In June 2004, Kristy summoned Jeff to a meeting at her and David's home,
after discovering "hickeys" on the neck of the eldest daughter, MA. MA had recently
turned 14 years of age. The purpose of the meeting was to discuss concerns that MA
was romantically involved with a 19-year-old male and had become sexually active. 
David was present during the meeting. In the process of the confrontation of MA
during the three-hour meeting, MA eventually broke down and made an outcry that
David, her stepfather, had been molesting her for a lengthy period of time. During
the same meeting, David admitted that he had been molesting MA for about four
years. He had touched her breasts and vaginal area and had taught her to masturbate. 
MA expressed concerns that David was "grooming" her younger sister, ME, for the
same abuse, having kissed ME on the face and neck and touched her breasts over her
clothing many times. ME was ten years old when MA made her outcry. Both girls
moved from Kristy and David's house and began to live with Jeff and his wife
Brenda, and temporary orders by the trial court confirmed that arrangement, with
periods of possession also designated for Kristy. 

 Despite MA's outcry and David's admissions, Kristy claimed at trial that
David's abuse of MA was minimal and that no abuse of ME had occurred. Very
shortly after MA's outcry, Kristy resumed an intimate relationship with David at their
home. 

 A criminal prosecution by Harris County ensued, as well as an investigation
by Children's Protective Services (CPS). Jeff filed this action to modify
conservatorship under the 1997 decree and obtained temporary orders granting him
managing conservatorship. Kristy filed a counterpetiton to modify the decree and a
motion to enforce unpaid child support. 

 The eldest of the girls, MA, viewed herself as responsible for these court
proceedings and the resulting disruption of her family and regretted her outcry. Jeff
testified at trial that his "key" concern for MA was that she realize that the abuse by
David was not her fault. His "key" concern for ME was that she realize that he loved
her as much as MA, even though he is not her biological father.

 David's criminal prosecution resulted in a decree of deferred adjudication, with
a ten-year period of community supervision. The conditions of community
supervision forbade David any contact with either MA or ME. The trial court's
temporary orders also forbade him any contact with either child. Nonetheless, Kristy
took the girls with her when she visited David at the Harris County jail on one
occasion. On another occasion, she arranged a Wal-Mart outing with the girls, during
which David was present at the same Wal-Mart store. 

 Kristy sued David for divorce "for financial reasons" while this case was
pending, but a proposed decree of divorce was never finalized and was "on hold"
according to Kristy's trial testimony. Kristy also claimed at trial that she had "moved
on" from her relationship with David and her plans for family reconciliation. But the
record shows continuing minimalization of the assaults on her daughters, continuing
ambivalence concerning the need and her ability to end the relationship with David,
and continuing lack of perception of the conflict of that relationship with her role as
parent to her daughters, David's victims. At the time of trial, David was still the
beneficiary of a life-insurance policy owned by Kristy. 

 MA ran away once from Kristy's home and twice from Jeff's home while this
case was pending. The first runaway from his home occurred after Jeff discovered
marihuana in her clothing. Jeff enrolled MA in Odyssey House, a residential
treatment center for 13 to 17 year-olds with drug dependency and behavior problems. 
Staff of Odyssey House who testified at trial stated that MA met the facility's
requirements. Kristy, however, deemed the center "not the type of facility that [MA]
needs." Kristy went into a tirade at the facility when MA was to be admitted and told
MA that she did not have to remain at Odyssey House and could leave whenever she
wished. (2) 

 The case was tried to the court on Jeff's motion to modify, Kristy's
counterpetition to modify, and Kristy's motion to confirm child-support arrearages. 
The witnesses in the five-day trial included the therapists for both girls and a
psychologist who examined Kristy and Jeff as well as the girls, and whose expert
report was admitted into evidence. 

 The trial court's judgment recites an express finding that "a material and
substantial change" had occurred in "the circumstances of the children, a conservator,
or other party" since rendition of the 1997 divorce decree and further recites that
modification of that decree "is in the best interest of the children." See Tex. Fam.
Code Ann. § 156.101(1) (Vernon Supp. 2006). The trial court removed Jeff and
Kristy as managing conservators and appointed Jeff sole managing conservator and
Kristy possessory conservator. Kristy has not challenged these determinations.

 The decree recites that "all visitation and possession rights" to be exercised by
Kristy be accomplished "through the SAFE [sic] Program" and "shall take place two
times per month during program hours." (3) In addition, the trial court required that
both Kristy and Jeff register immediately with the S.A.F.E. program and pay their
respective costs. These terms of possession and access would last while each child
was under 18 years of age and not otherwise emancipated. The decree further recites
that the trial court denied Kristy's motion requesting enforcement of child-support
arrearages and ordered her to pay child support to Jeff for each of the girls, to
maintain health insurance, and to pay fifty percent of any uninsured medical cost. 

 The decree specifies that Kristy, Jeff, and both girls undergo family and
individual counseling and imposed a requirement that MA's therapist have experience
in treating children engaging in Oppositional Defiant Disorder, conduct disorder, or
both, as well as experience in handling victims of sexual abuse. With respect to ME,
the trial court further specified that her therapy address the issues of social skills
development, self-esteem, and sexual abuse. Concerning Kristy, the trial court
ordered psychotherapy "to address the issues of sexual abuse of the children, the
impact of her choices, her distorted thinking regarding [David], and her failure to
appreciate the children's victimization" or "the sexual abuse of the children by
[David]." Jeff was ordered to participate in therapy for at least six months "to
increase his understanding of adolescent issues, parenting methods with
adolescents[,] and issues regarding the sexual abuse of the children." Kristy was
ordered to pay the costs of her and the children's therapy, and Jeff was ordered to pay
his costs. 

 The judgment enjoins both Kristy and Jeff from allowing David within 1,000
feet of the children and from allowing David to contact either child. Concerning MA,
the judgment ordered that Jeff keep her enrolled in Odyssey House until she
"completes the program or is discharged" from the program. In addition, the
judgment specifies that neither parent nor any relative be permitted to contact MA
"until the professionals at Odyssey House, Texas, give written notice to either or both
parties that they can contact or visit [MA]." Until that time, only the court-appointed
amicus attorney is permitted "any contact or communication" with MA during her
stay at Odyssey House. 

Discussion


 A motion to modify the parent-child relationship is a suit affecting the
parent-child relationship (SAPCR). Chalu v. Shamala, 125 S.W.3d 737, 738 (Tex.
App.--Houston [1st Dist.] 2003, no pet.) (citing Tex. Fam. Code Ann. § 101.032(a)
(Vernon 2002) (defining "suit affecting the parent-child relationship ")). A trial court
that enters a decree affecting a child, as here, retains continuing, exclusive
jurisdiction over SAPCRs pertinent to that decree. See id.; Tex. Fam. Code Ann. §§
155.202, 155.001-.003 (Vernon 2002)). 

 In addition, the trial court exercised specific authority in this case pursuant to
section 156.101 of the Family Code, which authorizes modification of a decree that
provides for the appointment of a conservator of a child, the terms and conditions of
conservatorship, or the possession of or access to a child. See Tex. Fam. Code Ann.
§ 156.101 (Vernon Supp. 2006). To modify an existing decree of conservatorship,
the trial court must conclude that modification would be in the best interest of the
child and that one of the following circumstances has occurred:

 (1) the circumstances of the child, a conservator, or other party
affected by the order have materially and substantially changed since the
earlier of:


 (A) the date of rendition of the earlier order; or


 (B) the date of the signing of a mediated or collaborative
law settlement agreement on which the order is based;


 (2) the child is at least 12 years of age and has filed with the court,
in writing, the name of the conservator who is the child's preference to
have the exclusive right to designate the primary residence of the child;
or


 (3) the conservator who has the exclusive right to designate the
primary residence of the child has voluntarily relinquished the primary
care and possession of the child to another person for at least six
months. 


Id. § 156.101(1)-(3) (emphasis added). Jeff relied on section 156.101(1)(A) in
seeking modification in this case, claiming that David's abuse of MA constituted a
material and substantial change that warranted removing Kristy as managing
conservator for her two daughters. 

 "The best interest of the child shall always be the primary consideration of the
court in determining the issues of conservatorship and possession of and access to the
child." Tex. Fam. Code Ann. § 153.002 (Vernon 2002); Lenz v. Lenz, 79 S.W.3d 10,
14 (Tex. 2002) (reiterating that best interest of child is primary consideration,
pursuant to legislative mandate). 

A. Standard of Review

 We review a trial court's decision on custody, control, possession, and
visitation of children for abuse of discretion, and we will reverse the trial court's
order only if we determine, from reviewing the record as a whole, that the trial court
abused its discretion. Turner v. Turner, 47 S.W.3d 761, 763 (Tex. App.--Houston
[1st Dist.] 2001, no pet.) (citing Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.
1982)). 

 A trial court abuses its discretion when it reaches a decision that is so arbitrary
and unreasonable that it amounts to a clear and prejudicial error of law, or when it
clearly fails to correctly analyze or apply the law. In re Ford Motor Co., 165 S.W.3d
315, 317 (Tex. 2005) (citing Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992)); Turner, 47 S.W.3d at 763. Because a trial court has no discretion in
determining what the law is, which law governs, or how to apply the law, we review
these types of discretionary rulings de novo. See In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006) (citing Walker, 827 S.W.2d at 840). But when we
review a ruling that results from the trial court's having resolved underlying facts, we
must defer to the trial court's factual resolutions, and any credibility determinations
that may have affected those resolutions, and may not substitute our judgment for the
trial court's judgment in those matters. See Walker, 827 S.W.2d at 839-40; Holley
v. Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ denied). 
Challenges to the sufficiency of the evidence do not constitute independent claims of
error for rulings subject to the abuse-of-discretion standard because the standard
incorporates sufficiency standards. See McGuire v. McGuire, 4 S.W.3d 382, 387 n.
2 (Tex. App.--Houston [1st Dist.] 1999, no pet.).

 When, as here, the trial court conducts a bench trial, but files no findings of fact
and conclusions of law, we may infer that the trial court made all findings necessary
to support its judgment. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). It is axiomatic
that any implied finding must be consistent with the judgment. Anderson Mill Mun.
Util. Dist. v. Robbins, No. 03-04-00369-CV, 2005 WL 2170355, at *6 (Tex.
App.--Austin, Sept. 8, 2005, no pet.). We presume, therefore, that the trial court
found all questions of fact in support of the judgment, and we must affirm if the
judgment can be upheld on any legal basis supported by the pleadings and the
evidence. See Point Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987);
Worford, 801 S.W.2d at 109. When, as here, the record includes a reporter's record
of the trial, the appealing party must show that the judgment of the court below
cannot be sustained by any theory raised by the evidence. See Whorton, 742 S.W.2d
at 278. 
B. Conditions of Possession and Access

 1. Specific Periods of Possession

 Kristy's first and second issues challenge the conditions imposed on her access
to and possession of the children. In a portion of her first issue, Kristy contends that
the trial court "erred in not ordering [her] specific periods of possession." Kristy
waived this issue by not raising it in the trial court. See Tex. R. App. P. 33.1(a). 
Moreover, her motion for new trial, as well as the trial court's judgment, negate
Kristy's contention. In her motion for new trial, Kristy argued that the trial court
abused its discretion by rendering a judgment that ordered periods of her possession
through the S.A.F.E. program. As Kristy acknowledged in the motion, the judgment
fixed her access to and possession of the children at two times per month during
S.A.F.E. program hours. The judgment also recites the duration of these periods of
supervised visitation, specifically until each of the children's 18th birthday, unless
the child were emancipated earlier. 

 We hold that the record and her own motion negate Kristy's argument and
therefore overrule the portion of the first issue in which Kristy claims that the trial
court abused its discretion by not awarding her specific periods of possession.

 2. Challenge to Visitation through S.A.F.E. Program

 In the remaining portion of her first issue and in her second issue, Kristy
contends that the trial court erred and abused its discretion by allocating the decision 
concerning her access to the children to the S.A.F.E. program to a third party "not
acting at the direction" of the trial court. (4) Kristy contends that the S.A.F.E. program
has no judicial authority and, therefore, no ability to ensure compliance; she further
contends that requiring involvement of the S.A.F.E. program in her possession
renders the judgment voidable and unenforceable. (5) We do not agree. 

 In appointing Kristy possessory conservator, the trial court complied with the
statutory presumption that favors a parent, as stated in section 153.191 of the Family
Code. See Tex. Fam. Code Ann. § 153.191 (Vernon 2002) (reciting presumption
that parent not appointed sole or managing conservator shall be appointed possessory
conservator unless trial court finds that appointment "not in the best interest of the
child and that parental possession or access would endanger the physical or emotional
welfare of the child"). 

 When warranted by the circumstances, the Family Code authorizes the limited
restrictions imposed on Kristy's rights, as possessory conservator, of access to and
possession of her children. See Tex. Fam. Code Ann. § 153.193 (Vernon 2002)
("Minimal Restriction on Parent's Possession or Access"). Pursuant to section
153.193, an order that "denies possession of a child to a parent or imposes restrictions
or limitations on a parent's right to possession of or access to a child" may not exceed
restrictions required to protect the child's best interest. Id.; see also In re Walters, 39
S.W.3d 280, 287 (Tex. App.--Texarkana 2001, no pet.) (concluding, on construing
sections 153.191 and 153.193 together, that no conflict in these statutes arises when
trial court appoints parent possessory conservator and also rules (1) that unrestricted
access by that parent would endanger child's physical or emotional welfare, and (2)
that restricted access would not); In re Lau, 89 S.W.3d 757, 759-60 (Tex.
App.--Houston [1st Dist.] 2002, orig. proceeding) (conditionally granting mandamus
relief to vacate temporary order denying habeas corpus relief to father denied any
possessory rights to child under temporary order). We emphasize that Kristy does not
challenge the underlying considerations on which the trial court relied in limiting
Kristy's access and possession, but merely contends that the restrictions are
unenforceable. 

 Kristy relies principally on Ex parte Brister, 801 S.W.2d 833 (Tex. 1990), to
support her contention that requiring her to exercise her possessory rights through the
S.A.F.E. program renders the decree unenforceable. We distinguish Brister at the
outset, because it resolved an original proceeding seeking a writ of habeas corpus, in
which the challenging party claimed that an order of contempt was void and thus
unenforceable. 801 S.W.2d at 833. In sustaining this challenge and granting habeas-corpus relief to order the relator discharged from her probated punishment, the
supreme court applied the settled rule that a judgment must set out terms for
compliance in clear and unambiguous terms and must clearly order the party to
perform the required acts in order to be enforceable by contempt. Id. at 834. The
flaw in the underlying judgment in Brister arose because the judgment contained a
standard order for visitation rights in favor of the father, but also permitted the father
to modify those rights based on his changing work shift, which resulted in a lack of
specific, ascertainable requirements on which the trial court could have held the
mother in contempt. Id. 

 In addition to being presumptively valid, (6) a condition not present in Brister's
habeas corpus context, see id., the terms of the judgment in this case do not lack
specificity and leave no confusion in notifying all who must abide with the terms
concerning what is required for compliance. The judgment states that Kristy may
exercise her rights of access and possession twice monthly, during S.A.F.E. program
hours, and until each child either reaches majority or is discharged from the program. 
Both Kristy and Jeff were ordered to contact the S.A.F.E. program through a
telephone number identified as the Houston Victims Assistance Program, to register
with the program, and to pay their respective costs for the program. In contrast to the
Brister judgment, which effectively delegated the actual terms of possession to the
father, see id., the judgment here notifies not only Kristy and Jeff, but also the
S.A.F.E. program, of Kristy's twice monthly possessory rights. Because the judgment
specifies that Kristy is to be permitted twice monthly supervised possession, any
failure of the S.A.F.E. program to permit either Kristy her twice monthly access is
readily enforceable in the trial court. 

 Kristy also challenges participation of the S.A.F.E. program as supervisor of
her possessory rights, on the grounds that the program lacks "judicial authority," and
"has no ability to ensure compliance with its demands, request [sic] or requirements."
Therefore, Kristy contends, the trial court's judgment lacks elements that will "ensure
that the policy of the State is complied with for this parent and child." 

 We note first that the authority on which Kristy relies does not support her
challenge, (7) which we reject, and we reiterate that the judgment notified Kristy, Jeff,
and the S.A.F.E. program that Kristy was entitled to exercise her rights of possession
and access twice monthly during program hours. By designating the S.A.F.E.
program as administrator and supervisor of Kristy's exercise of her rights of
possession and access to MA and ME, the trial court implicitly required that Kristy's
exercise of her twice monthly rights be carried out in a manner that protected not only
Kristy's rights to possession and access, but also her daughter's best interests. See
Tex. Fam. Code Ann. § 156.101(1). 

 For the reasons stated, we conclude that the terms specifying Kristy's
possession of and access to her daughters are ascertainable from the judgment, which
is, therefore, enforceable and not voidable. We further conclude that the trial court
ensured compliance with the policy of the State to permit Kristy to exercise the rights
of possession and access afforded by sections 153.191 and 153.193 of the Family
Code, while ensuring the best interests of MA and ME, as required by section
156.101(1) of the Code. See Tex. Fam. Code Ann. § 156.101(1), 153.191, 153.193.

 We overrule Kristy's second issue. 

C. Denial of Motion to Enforce Child-Support Arrearages

 In her third issue, Kristy challenges the portion of the trial court's judgment
that denied her motion for enforcement of child-support arrearages that Kristy
contends Jeff owes. To support her contention that the trial court abused its
discretion in denying the motion, Kristy argues that (1) principles of res judicata
preclude "relitigating" the final child-support obligations established in the 1997
decree, and (2) by denying the motion, the trial court failed its mandatory duty to
enforce those obligations and, therefore, effectively obviated them, in violation of res-judicata principles and sections 157.262 and 157.263 of the Family Code. See Tex.
Fam. Code Ann. § 157.262(a) (Vernon 2002) ("Except as provided by this section,
in a contempt proceeding or in rendering a money judgment, the court may not reduce
or modify the amount of child support arrearages.") (emphasis added); id., §
157.263(a) (Vernon Supp. 2006) ("If a motion for enforcement of child support
requests a money judgment for arrearages, the court shall confirm the amount of
arrearages and render one cumulative money judgment."). Kristy further contends
that "the only evidence presented was that the support had not been paid." We cannot
agree. 

 1. Section 157.252(a) Relief Denied--not Granted 

 The child-support provisions that Kristy sought to enforce appear in her and
Jeff's 1997 divorce decree. This decree became final long ago and was not appealed. 
 Well-settled principles of res judicata preclude any collateral attack on the
provisions of the 1997 final divorce decree. See Berry v. Berry, 786 S.W.2d 672, 673
(Tex. 1990); Huff v. Huff, 648 S.W.2d 286, 288 (Tex. 1983); In re M.K.R., 216
S.W.3d 58, 66 (Tex. App.--Fort Worth 2007, no pet. h.). (8) Similarly, unpaid child
support constitutes an "unfulfilled duty to the child," rather than a debt owing to the
custodial parent. Williams v. Patton, 821 S.W.2d 141, 145 (Tex. 1991). The Family
Code thus provides that "a child support payment not timely made constitutes a final
judgment for the amount due and owing . . . ." Tex. Fam. Code Ann. § 157.261(a)
(Vernon 2002). (9) 

 Accordingly, a trial court has no authority to "forgive," reduce, or modify
child-support arrearages. See Tex. Fam. Code Ann. § 157.262(a). Pursuant to
section 157.262(a), the trial court's exercise of its discretion is limited when the trial
court renders a money judgment in response to a motion for enforcement. See id. 
("[I]n rendering a money judgment, the court may not reduce or modify the amount
of child[-]support arrearages.") (emphasis added); Williams, 821 S.W.2d at 143-44
(noting that legislature denied trial courts authority to "forgive" child-support
arrearages); see also Attorney Gen. v. Stevens, 84 S.W.3d 720, 723 (Tex.
App.--Houston [1st Dist.] 2002, no pet.) (noting that section 157.262 limits exercise
of discretion when court renders money judgment on arrearages); Williams, 821
S.W.2d at 153 (Phillips, C.J., dissenting to refusal to acknowledge parties' agreement
absent court intervention) ("[T]he trial court acts as a 'mere scrivener' who
'mechanically' tallies the amount of arrearages."). (10) 

 But no "relitigation" of Jeff's child-support obligations occurred here, and res
judicata principles did not bar the trial court's resolution. Though Kristy's motion
for enforcement invoked section 157.262(a), the trial court did not "render a money
judgment" pursuant to that section in response to Kristy's motion for enforcement. 
To the contrary, as the judgment recites, the trial court simply "denied" Kristy's
motion without awarding her the relief she requested under section 157.262(a). 
Accordingly, nothing in the record supports Kristy's contention on appeal that the
trial court "reduce[d] or modif[ied] the amount of child support arrearages" or
otherwise "forgave" those obligations. See Tex. Fam. Code. Ann. § 157.262(a). (11)
 
The dispositive question thus becomes whether the trial court abused its discretion
by denying Kristy's motion to enforce those obligations. 

 2. Failure to Prove Arrearages Warranted Denial of Kristy's Motion

 To prevail on her motion seeking the enforcement authorized by section
157.001 and to obtain the "one cumulative money judgment" authorized and
mandated by section 157.263(a), Kristy had the burden to prove the amount of the
arrearages due. See In re S.R.O., 143 S.W.3d 237, 248 (Tex. App.--Waco 2004, no
pet.); Curtis v. Curtis, 11 S.W.3d 466, 472 (Tex. App.--Tyler 2000, no pet.). Once
the arrearages are proven, section 157.253(a) imposes on the trial court an
affirmative, ministerial duty to confirm the arrearages and reduce them to judgment. 
See In re S.R.O., 143 S.W.3d at 248; Curtis, 11 S.W.3d at 471. 

 The requirement imposed on the trial court by section 157.263(a) to "confirm
the amount of arrearages," compels, at a minimum, that the movant substantiate "the
amount of arrearages." See Tex. Fam. Code Ann. § 157.263(a). No section
157.253(a) duty arises, therefore, until the movant has met its burden to provide
adequate proof to substantiate the arrearages alleged. See In re S.R.O., 143 S.W.3d
at 248. 

 In her motion for enforcement in this case, Kristy claimed that Jeff's unpaid
child-support arrearages totaled $22,803.18. Kristy supported her motion with a
computerized printout obtained from the county child-support enforcement office and
a table that she prepared and attached to her motion for enforcement. On appeal,
Kristy contends that the proof she offered to substantiate the alleged arrearages was
the only evidence presented and was also uncontroverted. Jeff challenges that
contention on the grounds that Kristy's trial testimony not only conflicted with her
motion to confirm arrearages and the documentary evidence that she presented in
support of that motion at trial, but was, in addition, internally inconsistent and
conflicting. We agree. 

 Contrary to the assertion in her motion that Jeff's total arrearage under the
1997 decree amounted to $22,803.18, (12) Kristy's trial testimony concerning the
arrearages under the 1997 decree was inconclusive, as the following excerpts of her
testimony demonstrate: Kristy did not know how much of his $450 monthly
obligation Jeff had paid and did not know when he stopped paying; alternatively, Jeff
"never" paid after 1997; alternatively still, Jeff paid the $450 monthly from July 2004
until she was ordered to pay support to him under the trial court's temporary orders. 
Most importantly, when questioned about certain entries in one of her exhibits, which
showed no payments through county administered child-support, Kristy maintained
that she always received checks through Harris County and that she received them
monthly. Yet, she also acknowledged that Jeff made some payments to her directly
that were not reflected in the county records.

 In accordance with the abuse-of-discretion standard that controls our review,
see Turner, 47 S.W.3d at 763, we must defer to factual resolutions by the trial court
that derive from conflicting evidence, as well as any credibility determinations that
may have affected those resolutions, and we may not substitute our judgment for that
of the trial court in those matters. See Walker, 827 S.W.2d at 839-40; Holley, 864
S.W.2d at 706. 

 Given the inconsistencies and equivocation demonstrated by this record, Kristy
did not provide the necessary substantive basis on which the trial court might have
relied in order to execute the ministerial duty contemplated by section 167.262(a) to
enforce the $22,803.18 in child-support arrearages that Kristy initially alleged. We
cannot say, therefore, that the trial court abused its discretion by denying Kristy's
motion after resolving the inconsistencies between her trial testimony and the claims
that she made in her motion seeking enforcement. See Walker, 827 S.W.2d at
839-40; Holley, 864 S.W.2d at 706. We defer, therefore, to the trial court's implied
factual resolution and the resulting determination that Kristy failed her burden of
proof when she moved the trial court to confirm the arrearages that she claimed were
due and owing by Jeff under the 1997 decree. See id.; BMC Software Belg., N.V., 83
S.W.3d at 795; Worford, 801 S.W.2d at 109; Anderson Mill Mun. Util. Dist., 2005
WL 2170355 at *6. Because Kristy failed to meet her burden, no section 157.263(a)
duty to "confirm the amount of arrearages" ever arose. See Tex. Fam. Code Ann. §
157.263(a). 

 We hold that the trial court's implied finding, that Kristy failed her evidentiary
burden to establish Jeff's arrearages, is consistent with the judgment and supported
by the record. BMC Software Belg., N.V., 83 S.W.3d at 795; Worford, 801 S.W.2d
at 109; Anderson Mill Mun. Utility Dist., 2005 WL 2170355 at *6. 

 For these reasons, we hold that the trial court did not abuse its discretion by
failing to render judgment in Kirsty's favor for child-support arrearages. 

 We overrule Kirsty's third issue. 

Conclusion


 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. Paternity testing conducted during the discovery process confirmed that David is
ME's biological father.
2. Kristy has not challenged the portion of the trial court's judgment that requires that
MA continue at Odyssey House.
3. S.A.F.E. provides a Supervised Visitation Program that provides a safe and secure
place for children to be supervised during court ordered visitation. The S.A.F.E.
program supervision of Kristy's possession ordered by the trial court is administered
through the Harris County Victims Assistance Center.
4. We conclude that Kristy preserved this issue for review in her motion for new trial. 
Though Kristy did not assert, in the motion, that the terms of the order render the
order unenforceable, her motion includes a broad challenge to her twice monthly
access to and possession of her daughters through the S.A.F.E. program. We note that
Kristy's issue does not encompass a challenge to the requirement that she be
supervised when exercising her possessory rights.
5. Oral submission of this case clarified that Kristy contends that the trial court's
judgment is void and unforeceable. But, a judgment is void only when the court
rendering judgment "'had no jurisdiction of the parties, no jurisdiction of the subject
matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" Saudi
v. Brieven, 176 S.W.3d 108, 113 (Tex. App.--Houston [1st Dist.] 2004, pet. denied)
(quoting Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987)). When, as here, a
court with potential jurisdiction over a case renders a judgment that is regular on its
face and recites that the court's potential jurisdiction has been invoked, the judgment
is presumptively not void, though it may be challenged by a direct attack, for example,
by appeal. See Ramsey v. Ramsey, 19 S.W.3d 548, 552 (Tex. App.--Austin 2000, no
pet.). The trial court's jurisdiction in this case derived from sections 152.202 and
155.001-.003 of the Family Code. See Tex. Fam. Code Ann. §§ 152.202,
155.001-.003 (Vernon 2002) (governing continuing and exclusive jurisdiction over
child-custody matters by court rendering initial decree). Because the trial court's
jurisdiction was presumptively correct, we construe Kristy's challenge as contending
that the trial court's requiring that Kristy exercise her rights of possession and access
through the S.A.F.E. program rendered the judgment voidable for lack of
enforceability, rather than void. 
6. See preceding note.
7. Kristy's relies erroneously on section 156.006 of the Family Code, which governs
only temporary orders. See Tex. Fam. Code Ann. § 156.006 (Vernon 2002).
8. Subchapter E of chapter 156 of the Family Code governs prospective modification of
child-support orders. See Tex. Fam. Code Ann. §§ 156.401-.409 (Vernon 2002 &
Supp. 2006); see also Tex. Fam. Code Ann. § 152.202 (Vernon 2002) (providing for
continuing and exclusive jurisdiction of court rendering initial decree). A SAPCR that
relies on these provisions to modify the support provisions of a divorce decree
prospectively does not offend res-judicata principles. See Huff v. Huff, 648 S.W.2d
286, 288 (Tex. 1983) (citing former versions of subchapter E). 
9. Beginning in 1973, the legislature supplemented the traditional remedy of contempt
for failure to pay child support by establishing the right of a custodial parent to obtain
a money judgment for the amount of child-support arrearages that would be
enforceable like any judgment for debt. See Williams v. Patton, 821 S.W.2d 141, 153
(Tex. 1991) (Phillips, C.J., dissenting). The current version of this remedy appears
in subchapter F of chapter 157 of the Family Code, which is entitled "Judgment and
Interest." See Tex. Fam. Code Ann.§ § 157.261-69 (Vernon 2002 & Supp. 2006). 
Chapter 157 in its entirety governs all aspects of SAPCRs seeking enforcement. See
Tex. Fam. Code Ann. §§ 157.001-426 (Vernon 2002 & Supp. 2006). 
10. Section 157.263(a) of the Family Code requires that a trial court "render one
cumulative money judgment" if a motion for enforcement of arrearages requests a
money judgment. Tex. Fam. Code Ann. § 157.263(a) (Vernon 2002). 
11. That the trial court required Kristy to pay child support to Jeff, based on the changed
circumstances that also mandated awarding Jeff managing conservatorship of both
MA and ME--neither of which Kristy has challenged--does not alter our analysis. 

12. We note that an exhibit to the motion also states a different total arrearage of
$22,913.42.