# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00196-CV
NO. 03-11-00303-CV

**J. B., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NOS. 37,968 & 37,968A, HONORABLE ROB HOFMANN, ASSOCIATE JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J.B. appeals from judgments in two suits affecting her parental relationships with two children. The suits were originally one cause but were severed at the trial court. In cause number 03-11-00196-CV, the trial court terminated her parental rights to B.W.L.B. based in part on the affidavit J.B. signed relinquishing her parental rights to B.W.L.B. In cause number 03-11-00303-CV, J.B. was appointed the possessory conservator of A.L. She contends that her trial counsel rendered ineffective assistance with regard to both judgments. In cause number 03-11-00196-CV, she also contends that the Texas Department of Family and Protective Services failed to show that termination of her parental rights was in B.W.L.B.'s best interest. In cause number 03-11-00303-CV, she contends that the trial court erred by finding that appellant having possession of or access to A.L. would endanger the child's physical or emotional welfare and by finding that A.L.'s

best interest was served by not appointing appellant as her joint managing conservator. We will affirm the judgments.

**BACKGROUND**

The appellate record in these cases is relatively sparse, likely due in large part to the fact that these cases were decided on representations that the parties agreed to the disposition of parental rights and access.

According to the original petition, appellant gave birth to two children—A.L. in 1995 and B.W.L.B. in 2002. The children have different fathers. An affidavit[1] details the Department's history with the children, including reports of physical altercations between appellant and B.W.L.B.'s father, struggles between appellant and A.L., and physical assaults by B.W.L.B.'s father, appellant, and A.L. against B.W.L.B. It discusses methamphetamine use by appellant and assertions that she offered A.L. prescription pain pills as an incentive to clean her room. The affidavit discussed both fathers' use of marijuana and their criminal history. B.W.L.B.'s father had four charges involving assault causing bodily injury (the last in 2010), and A.L.'s father had three DWI offenses (the last in 2004).

The final hearing—which for clarity we will call "the trial"—was fairly perfunctory because the cases were presented as resolved by agreement. Appellant and her attorney appeared at the trial. Appellant's parents' attorney announced in open court the terms of a "Rule 11

---

[1] The trial court took judicial notice of its file, which included this affidavit, at the trial. The affidavit was made by a person identified in a separate affidavit as an authorized representative of the Texas Department of Protective and Regulatory Services.

agreement," including the assertion that appellant's parents would adopt their grandson, B.W.L.B., that A.L's father would be A.L.'s primary managing conservator and appellant her possessory conservator, and that appellant could visit the children as agreed by the parties and recommended by their counselor. A handwritten document entitled "Agreement" was filed in the clerk's record. It is signed by B.W.L.B.'s maternal grandparents, who state that they will allow appellant contact with B.W.L.B. "as recommended by the child's counsel and in the child's best interest. [Grandparents] will totally cooperate[] and encourage visitation with [appellant and B.W.L.B.]" A.L.'s father signed and agreed to be appointed her permanent managing conservator, with appellant the possessory conservator "with visitation and contact as recommended by the child's counselor" and A.L.'s father. This document was not signed by appellant.

The court also admitted and filed a document that appellant signed under oath concerning B.W.L.B. entitled Affidavit of Voluntary Relinquishment of Parental Rights to the Texas Department of Protective and Regulatory Services. Page one identifies appellant and her son, B.W.L.B. Page two is headlined "Acknowledgment of Rights; Termination of Rights" and includes the following statements:

> 2.2 "Termination of the parent-child relationship is in the best interest of the child.
>
> 2.3 "I understand that by naming the Department of Protective and Regulatory Services as managing conservator in this Affidavit of Relinquishment, I give up all my parental rights and grant them to the Department and/or to the adoptive parents with whom my child may be placed.["]

Page three continues with the following text:

3

3. **Designation of Department as Managing Conservator; Consent to Foster Care and Adoptive Placement**

 3.1 "I designate the Texas Department of Protective and Regulatory Services, whose address is . . . as managing conservator of the child.

 3.2 "I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties. I consent to the placement of the child for adoption or in substitute care by the Department or by a licensed child-placing agency.

4. **Affidavit of Relinquishment Irrevocable.**

 **"This Affidavit of Relinquishment of Parental Rights is and shall be final, permanent, and irrevocable. I fully understand that, if I change my mind at any time, I can never force the agency to destroy, revoke or return this affidavit.**

5. **Waiver of Citation, Notice, Hearing and Notice of Entry of Decree**

 5.1 "I fully understand that a lawsuit has been or may be filed in the court and cause number listed in the above caption, or in any court of competent jurisdiction, to terminate forever the parent-child relationship between me and the above-named child. I fully understand that the termination suit may or may not be combined with a suit to adopt my child. I understand that either way, once the court terminates my parental rights, I will have no further say concerning the child, including whether or not any child is adopted then or at some later time.["]

On page four of the affidavit, the following section was immediately above appellant's signature:

6. **Acknowledgment of Receipt and that Affidavit is Irrevocable "I fully understand that this affidavit, once signed, is irrevocable, and I will not be further informed of any hearings or proceedings affecting the child named in this affidavit, including any termination suit.**

 **"I have received a copy of this Affidavit of Relinquishment at the time of this signing."**

Appellant does not challenge the authenticity of her signature on the affidavit.

4

Testimony at the trial was limited and largely concerned termination of the parental rights of B.W.L.B.'s father and the mutual release of claims for child support between appellant and A.L.'s father—neither of which is at issue on appeal. Appellant testified to her agreement regarding child support for A.L. and responsibility for A.L.'s medical expenses. Appellant's attorney informed the court and the persons with custody of the children that appellant had taken anger management and parenting classes, had clean drug tests, and was, according to appellant's therapist, emotionally ready for supervised phone calls with her children. At the close of the trial, the court terminated B.W.L.B.'s parents' parental rights, approved B.W.L.B.'s placement with his maternal grandparents, and approved the mediated settlement naming A.L.'s father her sole managing conservator with appellant as a possessory conservator with access conditioned on approval by A.L.'s father and therapist. The court then severed the cause of action concerning A.L. from the cause of action concerning B.W.L.B.

The court set a "263 hearing"[2] and a hearing on placement review of the children. According to the trial court, it became apparent at that first post-trial hearing that appellant intended to appeal—likely due to her pro se filing of a notice of appeal, statement of points on appeal, and a motion for new trial. The trial court allowed appellant's trial counsel to withdraw, appointed new trial counsel, and set a later post-trial hearing.

---

[2] Under the law applicable at the time, the trial court was required to hold a post-trial hearing on whether "(1) a new trial should be granted; (2) a party's claim of indigence, if any, should be sustained; and (3) the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code." Former Tex. Fam. Code Ann. § 263.405(d) (Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2355, 2398, *amended by* May 21, 2007, 80th Leg., R.S., ch. 526, § 2, 2007 Tex. Gen. Laws 930, 930, *repealed by* Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 4, 2011 Tex. Gen. Laws _____.

In her pro se filings, appellant expressed her dissatisfaction with the judgments. She complained that her counsel had not communicated effectively with her. In her statement of points on appeal, she stated that she "was not in full understanding of what I had signed and have no intentions on giving up my parental rights as [B.W.L.B.'s] mother." She stated further, "[A]s I will willingly share custody with [A.L.]'s father . . . I want to move forward and rebuild my relationship between me and my two children." In her motion for new trial, she added that she has "completed classes and there is no reason that would benefit me or my children by terminating parental rights." She asks for telephone visits with both children and states, "I will do everything in my power to reunite me and my kids in the healthiest way possible."

At the 263 hearing, there was testimony regarding how the agreements resolving the cases were reached and presented. Appellant failed to appear but was represented by counsel. The Department's caseworker testified that she saw appellant and her attorney discuss the agreements, and saw appellant in open court when the agreements were announced. The caseworker said that the announcement in court made clear the difference between the termination of appellant's rights to B.W.L.B. and her appointment as possessory conservator of A.L. She testified that appellant was not coerced into signing the Affidavit of Relinquishment and that she signed it freely and voluntarily. The CASA volunteer who had witnessed the trial agreed that appellant conferred with her attorney and understood and agreed with the final orders. She also testified that both children have told her repeatedly that they want no contact with appellant. Appellant's mother testified that appellant talked with her attorney and understood what she signed. Appellant's mother testified that appellant said, "This is the hardest thing she's ever done, giving up her son."

6

**DISCUSSION**

Appellant contends in both cases that the Department did not establish its case that the dispositions of the children were in their best interests. She contends in both cases that she did not receive effective assistance of counsel.

**Best interest of B.W.L.B.**

Before terminating parental rights, the trial court must find that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(2) (West Supp. 2011). A child's best interest can be affected by a number of factors including the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The best interest standard does not permit termination merely because a child might be better off living elsewhere. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The strong presumption that a child's best interest is served by keeping the child with his or her biological parents disappears when confronted with evidence to the contrary. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). The evidence in favor of termination must be clear and convincing. *Id.*

In reviewing the factual sufficiency of the evidence to support a jury finding, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Overlaying that standard of review on the clear-and-convincing burden of

7

proof in termination cases, our appellate standard of review in such cases is as follows: "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must give due deference to the fact-finder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). When legal sufficiency of evidence supporting termination of parental rights is challenged, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *J.F.C.*, 96 S.W.3d at 266. In this bench trial, we assume that the trial court resolved disputed facts in favor of its decision if a reasonable fact-finder could do so, and we must disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.* at 266.

The evidence admitted at the trial favored the finding that termination of appellant's parental rights was in B.W.L.B.'s best interest. The trial court took judicial notice of the clerk's record, including the initial affidavit describing appellant's physical abuse of the children, her tolerance of A.L.'s physical abuse of B.W.L.B., and appellant's drug use. The trial court also had before it appellant's Affidavit of Voluntary Relinquishment of Parental Rights to the Texas Department of Protective and Regulatory Services. As set out above, appellant's signed and sworn affidavit plainly states, "Termination of the parent-child relationship is in the best interest of the child." It also contains several assertions that she understood the effects of the affidavit:

8

- I understand that by naming the Department of Protective and Regulatory Services as managing conservator in this Affidavit of Relinquishment, I give up all my parental rights and grant them to the Department and/or to the adoptive parents with whom my child may be placed.

- I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties. I consent to the placement of the child for adoption or in substitute care by the Department or by a licensed child-placing agency.

- **This Affidavit of Relinquishment of Parental Rights is and shall be final, permanent, and irrevocable. I fully understand that, if I change my mind at any time, I can never force the agency to destroy, revoke or return this affidavit.**

- I fully understand that a lawsuit has been or may be filed in the court and cause number listed in the above caption, or in any court of competent jurisdiction, to terminate forever the parent-child relationship between me and the above-named child. I fully understand that the termination suit may or may not be combined with a suit to adopt my child. I understand that either way, once the court terminates my parental rights, I will have no further say concerning the child, including whether or not any child is adopted then or at some later time.

- **I fully understand that this affidavit, once signed, is irrevocable . . . .**

(Underlining added.) This language was not tucked away in a massive document or in fine print, but was a substantial portion of the affidavit's four pages of standard-sized text. (A fifth page was devoted solely to verification.) There was no evidence or indication at the trial from anyone, including appellant, that she did not understand what she signed. The trial court announced the termination of appellant's parental rights to B.W.L.B. in open court without objection from appellant. The evidence in the record—including appellant's sworn statement that termination of her parental rights was in her child's best interest—provided legally and factually sufficient evidence

9

to support the trial court's conclusion that termination of her parental rights was in her child's best interest.

Appellant did not create a post-termination record that undermined the trial court's finding of the child's best interest. She did not provide a sworn statement contradicting the substance or the voluntariness of her sworn statements in her Affidavit of Relinquishment. Although appellant asserted in her unsworn statement of points on appeal and motion for new trial that she did not fully understand what she had signed and had no intention of giving up her parental rights to B.W.L.B., she did not swear to that assertion under oath in writing or in court. Most critically, appellant failed to appear, testify, or present evidence at the 263 hearing. Her attorney attended and cross-examined witnesses, but every witness who testified said without controversion they believed that appellant understood the effect of the Affidavit of Relinquishment. Appellant's mother testified that appellant said before the trial, "This is the hardest thing she's ever done, giving up her son." The only evidence in the record supports a conclusion that appellant understood the effect of the affidavit when she signed it. Appellant failed to present any proof after trial rebutting the evidence that termination would be in B.W.L.B.'s best interest. She asserted in her pro se motion for new trial that "there is no reason that would benefit me or my children by terminating parental rights," and that "I will do everything in my power to reunite me and my kids in the healthiest way possible." These unsworn assertions fail to undermine the evidence—including her own sworn, signed statement in her affidavit—that termination of her parental rights was in B.W.L.B.'s best interest.

This record contains factually and legally sufficient evidence to support the court's conclusion that termination of appellant's parental rights was in B.W.L.B.'s best interest.

10

**Best interest of A.L. and danger to A.L.'s physical and emotional welfare**

Appellant contends that there was legally and factually insufficient evidence to support the trial court's departure from the rebuttable presumption that both parents would be appointed joint managing conservators. *See* Tex. Fam. Code Ann. § 153.131(b) (West 2008). She also argues that the evidence did not establish that parental possession or access would endanger the physical or emotional welfare of the child.[3] She contends that she did not sign the Rule 11 Agreement and that there is no evidence that she understood the Rule 11 Agreement.[4]

The record contains sufficient evidence to support the trial court's decisions on appellant's conservatorship and visitation of A.L. Though appellant did not sign the Agreement and the custody decree is consistent with the Agreement, there is no showing that the Agreement affected

---

[3] Although we find no such explicit finding made by the court in the record, a possessory conservator's visitation rights may be curtailed if unrestricted visitation would endanger the physical or emotional welfare of the child. *See George v. Jeppeson*, 238 S.W.3d 463, 470 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also* Tex. Fam. Code Ann. § 153.193 (West 2008). We assume appellant is challenging the limitation on her visitation of A.L.

[4] The Rule 11 Agreement was included only in a supplemental clerk's record filed in appellate cause number 03-11-00196-CV. The Rule 11 Agreement, however, was filed in trial court cause number 37,968 at the trial before the severance order was signed. Documents filed in a cause before a severance are also part of the record of the severed cause. *See Padilla v. LaFrance*, 907 S.W.2d 454, 459 (Tex. 1995). "Though the severed cause *number* originates with the severance order, the severed *cause* stems from the inception of the original cause. Though economy dictates that county clerks need not put copies of every document from the original cause into the severed cause while the cases are still in county court, clerks must, when properly requested, place into the appellate record for the severed cause relevant documents that were filed in the original cause before the severance order." *New Hampshire Ins. Co. v. Tobias*, 80 S.W.3d 146, 148-49 (Tex. App.—Austin 2002, order transferring record). To the extent necessary in appellate cause number 03-11-00303-CV, we take judicial notice of the appellate record filed in appellate cause number 03-11-00196-CV. *See In re Riley*, 339 S.W.3d 216, 221 n.5 (Tex. App.—Waco 2011, orig. proceeding); *Trevino v. Pemberton*, 918 S.W.2d 102, 103 n.2 (Tex. App.—Amarillo 1996, orig. proceeding).

11

the court's choice not to appoint appellant a joint managing conservator along with A.L.'s father. As discussed above, the trial court took judicial notice of its file, which included a Department caseworker's affidavit describing appellant's drug use, her tactic of offering A.L. prescription painkillers as an incentive to clean her room, and her physical altercations with A.L., including putting A.L. in a choke hold and shoving her into a bathtub. These sworn allegations were not controverted by evidence, argument, or assertion in an unsworn document.[5] The uncontroverted evidence in the record is legally and factually sufficient to rebut the presumption that appointment of both parents as joint managing conservators of A.L. is in A.L.'s best interest. That evidence is also legally and factually sufficient to support an implied finding that unrestricted visitation with A.L. would either not be in the child's best interest or would endanger the child physically or emotionally. Finally, legally and factually sufficient evidence supports the court's choice not to appoint appellant as a joint managing conservator of A.L.

**Assistance of counsel**

Appellant contends that her appointed trial attorney provided ineffective assistance of counsel. Proving ineffective assistance of counsel requires a showing that (1) counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which "requires showing that counsel's errors

---

[5] Appellant was present during the trial, was questioned regarding a purported agreement about waiver of child-support claims, and did not object or otherwise comment on the record when her parents' attorney announced the terms of her custody of A.L. under the parties' alleged agreement, nor did she object or comment on the record when the trial court announced a custody arrangement consistent with that agreement. Even in her unsworn pro se motion for new trial, appellant said she sought only to be permitted telephone visits with A.L.

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In adopting the *Strickland* test for parental termination cases, the supreme court explained that, taking into account all of the circumstances surrounding the case, we "must primarily focus on whether counsel performed in a reasonably effective manner. . . . In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* (internal quotes omitted). Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *In re H.R.M.*, 209 S.W.3d at 111 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Appellant raises several complaints regarding her counsel's representation at trial. She complains that counsel did not communicate effectively with her, most notably regarding the meaning of the affidavit she signed and the Agreement signed by her parents and A.L.'s father. She complains that trial counsel did not inspect or object to the admission of the Affidavit of Relinquishment, that she herself did not inspect or object to the admission of the Affidavit of Relinquishment, and that no one testified regarding the "credibility or reliability of [appellant]'s voluntarily signing the affidavit." She makes similar complaints regarding the Agreement.

Appellant cites no evidence in support of these allegations. The trial record is silent regarding whether appellant or her trial counsel had seen the Affidavit of Relinquishment or the Agreement. Testimony at the 263 hearing indicated that appellant and other parties had, just before

13

the trial, negotiated the disposition of the case including parental rights, custody arrangements, and child-support claims. Both the Affidavit of Relinquishment and the Agreement were dated and file-stamped February 15, 2011—the same date as the trial. There is no showing that appellant's trial counsel did not review the documents or that the documents filed differed in any way from the documents prepared just before trial. Appellant's unsworn assertions that she did not know what these documents said or meant are not evidence. Appellant had the opportunity to present testimony or evidence regarding these issues at the 263 hearing, and she failed to appear or present evidence during or outside of that hearing.

Our independent examination of the record does not reveal any errors by counsel so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment or that prejudiced appellant. The uncontroverted evidence in the record shows that appellant abused and neglected her children while using illegal drugs. It shows that she allowed A.L., a young teenager, to drink alcohol and allowed A.L.'s friends to get drunk. Appellant offered A.L. prescription painkillers as an incentive to clean her room. She allowed A.L. to physically abuse B.W.L.B. Appellant helped the children escape the son's abusive father, but the uncontroverted testimony is that both children repeatedly and without wavering said they wanted no contact with appellant. Nevertheless, the result of the trial proceeding is that appellant retained her parental rights to A.L. and that both children are placed with persons who agreed to permit contact between the children and appellant as recommended by the children's counselors. On the record presented, we find no ineffective assistance of counsel warranting reversal.

14

**CONCLUSION**

Finding that legally and factually sufficient evidence supports the findings that the trial court's judgments are in the children's best interests and finding no evidence to support the assertions that appellant received ineffective assistance of counsel, we affirm the Final Order in Suit Affecting the Parent-Child Relationship in each of these appellate causes.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   February 24, 2012